**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| GLOBAL GROUND AUTOMATION, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | **C.A. No. 6:08-cv-374** |
| v. | § | |
| | § | |
| GROUNDREZ, LLC | § | **Jury Trial Demanded** |
| | § | |
| Defendant. | § | |

---

**MOTION FOR SUMMARY JUDGMENT**

---

Douglas R. McSwane Jr.
Texas State Bar No. 13861300
Potter Minton P.C.
110 N. College, Suite 500
Plaza Tower
Tyler, Texas 75702
Telephone:  (903) 597-8311
Facsimile:  (903)
E-mail:
dougmcswane@potterminton.com

Mark A. Calhoun
Texas State Bar No. 03641500
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  (214) 665-3616
Facsimile:  (214) 665-5916
Email:  calhounm@gtlaw.com

Of Counsel:

Mary-Olga Lovett
Texas State Bar No. 00789289
Anthony F. Matheny
Texas State Bar No. 24002543
Greenberg Traurig, LLP
1000 Louisiana Street

Houston, Texas 77021
Telephone:  (713) 374-3583
Facsimile:  (713) 754-7583
Email: mathenya@gtlaw.com
        lovettm@gtlaw.com

John P. Ward
Application for admission
pro hac vice pending
E. Patrick Ellisen
James W. Soong
Application for admission
pro hac vice pending
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone:  (650) 328-8500
Facsimile:  (650) 328-8508
Email:  wardj@gtlaw.com
        ellisenp@gtlaw.com
        soongj@gtlaw.com

**ATTORNEYS FOR PLAINTIFF GLOBAL GROUND AUTOMATION, INC.**

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED BY COURT .....................................2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .........................................2

IV. AUTHORITIES AND ARGUMENT....................................................................10

    A. Summary Judgment Standard ................................................................10

    B. Patent Infringement Standard...............................................................10

    C. Defendant Literally Infringes
       Claims 11, 13-15, 17, and 18 of the '706 Patent. ...............................12

        1. The '706 Patent is Valid and Enforceable ................................12

        2. Defendant Is Infringing Claims 11, 13-15, 17, and 18 ..................12

        3. Defendant's Infringement Is Willful ..............................13

        4. GGA's Lost Profits Damages for Defendant's Infringement ..............13

        5. GGA is Entitled to Recover its
          Reasonable and Necessary Attorneys' Fees ................................15

        6. GGA is Entitled to Prejudgment and Post-Judgment Interest .............16

    D. GGA Is Entitled to a Permanent Injunction......................................16

        1. GGA Has Suffered Irreparable Injury ...........................17

        2. GGA's Loss Is Not Compensable Through Money Damages.................19

        3. The Balance of Hardships Favors
          Issuance of a Permanent Injunction.................................20

        4. The Public Interest Is Served by Granting Injunctive Relief.........21

    E. Defendant's Counterclaims Should be Dismissed With Prejudice ...................21

V. Conclusion .......................................................................................22

i

## TABLE OF AUTHORITIES

P̲A̲G̲E̲

*Acumed, LLC v. Stryker Corp.*,
551 F.3d 1323 (Fed. Cir. 2008)...........................................................................16, 19, 21

*American Medical Systems, Inc. v. Medical Engineering Corp.*,
6 F.3d 1523 (Fed. Cir. 1993)............................................................................................13

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2009)..........................................................................................21

*Brooktrout, Inc. v. Eicon Networks Corp.*,
No. 2:03-cv-59, 2007 WL 1730112 (E.D. Tex. June 14, 2007) .......................................17

*Brown v. 3M*,
265 F.3d 1349 (Fed. Cir. 2001).........................................................................................11

*Dawn Equip. Co. v. Kentucky Farms Inc.*,
140 F.3d 1009 (Fed. Cir. 1998)...................................................................................10, 11

*eBay v. MercExchange, LLC*,
547 U.S. 388 (2006)..........................................................................................................16

*Eli Lilly & Co. v. Barr Labs., Inc.*,
251 F.3d 955 (Fed. Cir. 2001)...........................................................................................10

*General Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983)..........................................................................................................16

*i4i Ltd. P'ship v. Microsoft Corp.*,
589 F.3d 831 (Fed. Cir. 2010)...........................................................................16, 17, 19, 21

*i4i Ltd. P'ship v. Microsoft Corp.*,
670 F.Supp.2d 568 (E.D. Tex. 2009)...........................................................................17, 21

*Jergens v. McKasy*,
927 F.2d 1552 (Fed. Cir. 1991).........................................................................................12

*Kloster Speedsteel AB v. Crucibel Inc.*,
793 F.2d 1565 (Fed. Cir. 1986).........................................................................................15

*Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*,
61 F.Supp. 512 (E.D.La. 1982), *aff'd*,
761 F.2d 649 (Fed. Cir. 1985)...........................................................................................14

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998).......................................................................................11

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ..........................................10, 11

*Mass Eng. Design, Inc. v. Ergotron, Inc.*,
633 F.Supp.2d 361 (E.D. Tex. 2009)...............................................................................17

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*,
505 F.Supp.2d 359 (S.D. Tex. 2007).................................................................................20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
Civil Action No. 2-04-cv-32 (TJW),
2007 WL 869576 (E.D. Tex. March 21, 2007)
*overruled on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008) ..........................................20

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................................10, 11

*Reedhycalog UK, Ltd., v. Diamond Innovations, Inc.*,
No. 6:08-cv-325, 2010 WL 3238312 (E.D. Tex. August 12, 2010) .....................14, 15, 17

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) ........................................................................14

*Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*,
74 F.3d 1216 (Fed. Cir. 1996)..........................................................................................11

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
127 F.3d 1462 (Fed. Cir. 1997).................................................................................14, 15

*SRI Int'l, Inc.  v. Matsushita Elec. Corp.*,
775 F.2d 1107 (Fed. Cir. 1985) (*en banc*) .....................................................................10

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
62 F.2d 1464 (Fed. Cir. 1988).........................................................................................16

*Tivo Inc. v. EchoStar Communs. Corp.*,
446 F. Supp. 2d 664 (E.D. Tex. 2006).......................................................................17, 20

*Visto Corp. v. Seven Networks, Co*,
No. 2:03-cv-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) .....................17, 20

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)..........................................................................................11

**Statutes**

28 U.S.C. § 1961(a) ........................................................................................16

35 U.S.C. § 282..........................................................................................2, 12

35 U.S.C. § 284.....................................................................................2, 10, 14

35 U.S.C. § 285.....................................................................................2, 10, 15

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 56(c)  ....................................................................................10

Plaintiff Global Ground Automation, Inc. ("GGA") hereby files this Motion for Summary Judgment ("Motion") and in support respectively shows:

## I. INTRODUCTION

GGA and Defendant GroundRez LLC ("Defendant" or "GroundRez") are competitors in the ground transportation reservation services industry.  Shortly after the formation of Defendant, Defendant developed and implemented a system that infringes upon claims 11, 13-15, 17, and 18 of U.S. Patent No. 5,953,706 ("the '706 Patent").  Defendant has been fully aware of the existence of the '706 Patent since at least late-March 2007, yet Defendant proceeded to infringe the '706 Patent and, in so doing, stole numerous clients from GGA.  Defendant's infringement also resulted in Defendant entering into various exclusionary contracts with other parties that resulted in GGA being unable to compete in areas of the industry that are covered by the '706 Patent.  As a result of Defendant's infringement, GGA has lost profits in the amount of at least $158,483.00.[1]  In addition, due to Defendant's knowledge of the '706 Patent, its failure to comply with the Court's local patent rules and the Court's orders, its failure to respond to written discovery requests, and its failure to show any intent to defend itself in this action since its attorneys of record were granted permission to withdraw, GGA seeks a finding of willful infringement by Defendant, trebling of its damages, a finding that this case is exceptional to support an award of attorneys' fees, recovery of its costs, prejudgment and post-judgment interest, and entry of a permanent injunction preventing Defendant from continuing its infringement of the '706 Patent.

---

[1]      Due to Defendant's refusal to respond to GGA's Written Discovery Requests, GGA is unable to ascertain, without speculation, all of its damages caused by Defendant's infringement.  Should GGA's motion be denied, GGA reserves its right to compel responses to its written discovery, and to engage in other discovery, so that it can ascertain the full amount of its damages.

## II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

GGA submits that the following issues are to be decided by the Court:

1.      Whether Defendant has willfully infringed the '706 Patent.

2.      The amount of damages to be awarded to GGA for Defendant's willful infringement, including whether the damages should be enhanced pursuant to 35 U.S.C. § 284.

3.      Whether this case is exceptional pursuant to 35 U.S.C. § 285 and, if so, the amount of attorneys' fees to be awarded to GGA.

4.      The amount of costs to be awarded to GGA.

5.      Whether prejudgment and post-judgment interest should be awarded and, if so, the rate and timing for calculating such interest.

6.      Whether Defendant should be permanently enjoined.

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

GGA provides ground transportation reservation services that automate and simplify the ground transportation reservation process for corporations, travel managers, and car service providers.  Declaration of Gregg Tuccillo, ¶¶ 1-2, a true and correct copy of which is attached hereto as Exhibit A ("Tuccillo Decl.").  Specifically, GGA provides a software platform from which users, travel agents, corporate travel departments and ground transportation providers such as limousine providers, town car providers, and the like, can schedule ground transportation for their clients.  *Id.*, ¶ 2.

GGA is the owner of the '706 Patent which is entitled "Transportation Network Systems."  *Id.*, ¶¶ 2-3.  The '706 Patent issued on September 14, 1999, based upon a non-provisional patent application filed on October 21, 1997.  *Id.*  The '706 Patent is valid, subsisting, and enforceable.  35 U.S.C. § 282 (providing presumption of validity); *Id.*, ¶ 2.

2

GGA provides global ground reservation services through a system it refers to as its "Saturn System." *Id.*, ¶ 4;  Declaration of Adam Kupper, ¶¶ 1-3, a true and correct copy of which is attached hereto as Exhibit B ("Kupper Decl.").  GGA's Saturn System is covered by the claims of the '706 Patent.  Tuccillo Decl., ¶ 4; Kupper Decl., ¶ 3.  Specifically, GGA's Saturn System performs all of the steps of at least method claims 11, 13-15, 17, and 18 of the '706 Patent.  Kupper Decl., ¶ 3.

As GGA owns the '706 Patent, GGA was the world's first company to provide a global reservation system for ground transportation.  Tuccillo Decl., ¶ 4.  Accordingly, GGA has been able to use the '706 Patent to secure a strong position within the marketplace for global ground reservation services.  Tuccillo Decl., ¶ 4.  This position has been further solidified due to the fact that neither GGA nor any of the previous owners of the '706 Patent has ever licensed the '706 Patent.  Tuccillo Decl., ¶ 5.

In December, 2006, Defendant was formed so that it could compete with GGA.  *Id.*, ¶ 6.  Defendant was formed with the assistance of Anthony Bonanno, who is the President of Defendant.  *Id.*  Prior to forming Defendant, Mr. Bonanno operated as a service provider to GGA's predecessors-in-interest.  *Id.*  In this capacity, Mr. Bonanno had access to the inner workings of GGA's predecessors-in-interest and learned how the Saturn System functioned and operated.  *Id.*  Mr. Bonanno was also aware of the '706 Patent well before Defendant was formed.  *Id.*

Despite being fully aware of the '706 Patent, Defendant, with the assistance of Mr. Bonanno, copied GGA's Saturn System and launched its business by providing services that incorporated GGA's patented methods.  *Id.*, ¶¶ 6, 8, 16, 17; Declaration of Yannis Papakonstantinou, ¶¶ 1-8, a true and correct copy of which is attached hereto as Exhibit C

("Papakonstantinou Decl."); Declaration of John P. Ward, ¶¶ 1-2, 14, 15, a true and correct copy of which is attached hereto as Exhibit D ("Ward Decl.").  In particular, Defendant adopted and began using a computer software system that included the following components:  (1) a central routing service (referred to herein as the "GroundRez Switch"); (2) Global Distribution System Tools (referred to herein as the "GroundRez GDS"); (3) Corporate Booking Tools (referred to herein as the  "GroundRez CBT"); and (4) the GroundRez Booking System.  *Id.*  All of the steps of method claims 11, 13-15, 17, and 18 of the '706 Patent are performed by Defendant while providing its ground transportation reservation services that utilize the GroundRez Switch, the GroundRez GDS, the GroundRez CBT, and the GroundRez Booking System.  *Id.*

While utilizing GGA's patented methods, Defendant in 2007 entered into a preferred exclusive relationship with GetThere, the leading Corporate Booking Tool provider for U.S. corporate clients, even though GGA's predecessor-in-interest had also competed with Defendant for this relationship with GetThere.   Tuccillo Decl., ¶ 6.  The relationship with GetThere provided Defendant with the exclusive preferred partner position for all of GetThere's accounts.  *Id.*  Subsequent to GetThere providing Defendant with its preferred partner status, in April, 2007, due to pressure from one of GetThere's biggest clients, American Express Travel Services, GetThere entered into a non-exclusive distribution agreement with GGA's predecessor-in-interest; however, GetThere limited its relationship with GGA's predecessor-in-interest such that GGA's predecessor-in-interest was only allowed to offer its services to reseller accounts of American Express Travel Services.  *Id.*  Thus, the relationship between Defendant and GetThere provided Defendant with the exclusive preferred partner position for GetThere for all of GetThere's direct customers as well as all other customers that were not part of the American Express Travel Service reseller program.  *Id.*  Accordingly, Defendant obtained the business of

essentially the majority of GetThere's clients. *Id.* As GetThere has approximately 40% market share of corporate clients, Defendant's entrance into its agreement with GetThere immediately portrayed Defendant as a direct competitor of GGA who could provide services that were identical to GGA's patented services. *Id.* In addition, the exclusionary deal between Defendant and GetThere prohibited GGA from doing business with GetThere which substantially impacted GGA's revenues and market share of the global reservation system for ground transportation. *Id.*

In July, 2007, GetThere issued a press release just prior to the National Business Travel Association convention in Boston, which is the largest convention of corporate travel buyers in the world, advising GGA's current clients and potential new clients that it had formed an exclusive on-line relationship with Defendant. *Id.*, ¶ 7. Also during the National Business Travel Association convention in Boston, GetThere distributed marketing materials that promoted its GetThere Ground Network and exclusively promoted Defendant as its technology provider. *Id.*

During this same period of time, Defendant began distributing a marketing brochure in which it referenced itself as the "first" ground transportation switch in the industry. *Id.*, ¶ 8. However, this statement is incorrect because GGA, through its predecessors-in-interest, has been providing these services under the '706 Patent since 2000. *Id.* Thus, like the exclusive relationship between Defendant and GetThere, the press release from GetThere and marketing brochure from Defendant provided "validation" that Defendant was a direct competitor of GGA which further impacted GGA's business. *Id.* Additionally, GetThere's press release and Defendant's marketing brochure raised the issue among GGA's clients and potential clients as to whether GGA really had a patent that covered how its services were provided due to Defendant's apparent ability to provide the identical services without having a license to the patent. *Id.*

5

Contemporaneously with Defendant's entry into competition with GGA, Defendant began to actively solicit as a client, Pfizer, Inc. ("Pfizer"), which at the time happened to be GGA's second largest account.  *Id.*, ¶ 9.  In fact, Pfizer had been a client of GGA since November 2002.  *Id.*  As a result of Defendant's solicitation of Pfizer, Pfizer was led to believe that Defendant could provide services identical to GGA's and, therefore, Pfizer issued a "Request for Proposal" for its ground transportation reservation needs.  *Id.*  In September, 2007, Pfizer notified GGA that Pfizer had awarded its ground transportation vendor contract to Defendant, despite the fact that GGA had specifically identified the '706 Patent in GGA's responses to Pfizer's Request for Proposal.  *Id.*  Other than GGA and Defendant, no other competitor of GGA responded to Pfizer's Request for Proposal.  *Id.*

In addition to Pfizer, Defendant also targeted other GGA clients to provide services that were identical to the patented services that GGA provided to those clients, none of which were targeted by any other competitor of GGA to provide services that were identical to the patented services that GGA provided to those clients.  *Id.*, ¶ 10.  In particular, Defendant secured a preferred provider relationship with BCD Travel, the third largest travel agency in the United States.  Based upon this relationship with BCD Travel, BCD Travel promoted the use of Defendant's services, to the exclusion of GGA's patented services, with the majority of BCD Travel's clients, including approximately 20 of BCD Travel's corporate accounts which included Deloitte and Touche.  *Id.*  Up to this point in time, Deloitte and Touche was GGA's third largest account.  *Id.*

In February, 2009, BCD Travel circulated a letter to the service provider community, which comprises limousine providers, town car providers, and the like, in which BCD Travel (1) endorsed Defendant as its preferred automation supplier for ground transportation; (2) informed

6

the service provider community that BCD Travel was implementing a ground transportation technology process powered by Defendant; and (3) inferred through this communication that by participating with BCD Travel and Defendant, these ground transportation service providers would gain more exposure and, therefore, more reservations as a result of their willingness to accept reservations from Defendant. *Id.*, ¶ 11.

In addition to losing essentially all of its Pfizer business to Defendant, and having its business restricted by Defendant's relationships with GetThere and BCD Travel, GGA has also lost substantial business from Wyeth (which was recently acquired by Pfizer), British Petroleum, Capital One, and HBO Travel, all of whom are obtaining services from Defendant that are identical to the patented services provided, or previously provided, to these clients by GGA. *Id.*, ¶ 12. All of these clients previously sought, and were provided, with services from GGA that were covered by the '706 Patent. *Id.* In addition, Defendant to this day continues to provide all of these clients with the identical services that were provided by GGA through its patented Saturn System. *Id.* Thus, Defendant would not have obtained these clients from GGA without infringing the '706 Patent. *Id.*

Defendant also has engaged in a marketing campaign through which Defendant tells clients and potential clients of GGA that it can provide the identical services that GGA provides. *Id.*, ¶ 13. Thus, Defendant directly attacks GGA's position in the marketplace and misrepresents to the clients and potential clients that it can provide the identical services, when in fact, to do so requires Defendant to infringe the '706 Patent. *Id.*

As a result of Defendant entering the marketplace to compete against GGA, GGA has lost at least $158,483.00 in profits that it would have received but for Defendant's infringement. *Id.*, ¶ 14. Moreover, GGA's credibility and goodwill with its clients and potential clients is

jeopardized because they have come to rely on GGA's statements that the '706 Patent grants GGA the right to exclude others from providing services that are identical to GGA's services. *Id.*, ¶ 15.   Defendant's infringement of GGA's '706 Patent has impaired GGA's goodwill, reputation, and client base by undermining these factual statements.   As a consequence, GGA has been irreparably harmed and will continue to be irreparably damaged by such acts in the future unless Defendant is permanently enjoined by this Court from continuing its unlawful activity. *Id.*

In light of Defendant's refusal to stop all of its infringement, on September 24, 2008, GGA sued Defendant for willful infringement of the '706 Patent.   Doc. No. 1.   Pursuant to the Court's then in place Docket Control Order, on February 6, 2009, GGA served GGA's Disclosure of Asserted Claims and Infringement Contentions and Document Production Accompanying Disclosure under P.R. 3-1 and P.R. 3-2.   *See* Notice by GGA of compliance with P.R. 3-1 and P.R. 3-2 filed on February 9, 2009 (Doc. No. 18).

Pursuant to the Court's Order dated March 20, 2009, the deadline for Defendant to serve its Preliminary Invalidity Contentions in compliance with P.R. 3-3 and P.R. 3-4 was extended, without opposition from GGA, from May 13, 2009, to May 28, 2009.   Doc. No. 26.   Thereafter, GGA once again agreed to extend the deadline for Defendant to serve its Preliminary Invalidity Contentions to June 1, 2009.   Ward Decl., ¶ 3.   Finally, in the Court's Amended Docket Control Order entered February 24, 2010, Defendant was provided yet another extension, until April 21, 2010, to serve its Preliminary Invalidity Contentions.   Doc. No. 43.   Despite having the benefit of these extensions, Defendant has never served GGA with its Preliminary Invalidity Contentions.   Ward Decl., ¶ 3.

Further, Defendant failed to comply with P.R. 4-1 due to its failure to exchange proposed terms and claim elements for construction prior to the deadline of May 3, 2010, despite the fact that GGA served Defendant with its proposed terms and claim elements for construction in June, 2009.  Ward Decl., ¶ 4; Doc. No. 27 (GGA's Notice of Compliance with P.R. 4-1).

In addition to failing to comply with the Court's local patent rules, Defendant has failed to comply with this Court's order that it obtain legal counsel.  Initially, Defendant was represented by attorneys from The Heartfield Law Firm (Doc. No. 8) and McDermott Will & Emery (Doc. Nos. 9, 10).  On August 31, 2009, the Court granted Defendant's motion to allow its attorneys to withdraw as counsel.  Doc. No. 35.  Since that time, Defendant has been "represented" *pro se* by Mr. Jason Diaz, despite this Court's order that Defendant obtain legal representation on or before April 30, 2010.  Doc. No. 52.  Moreover, as indicated by the Court, if Defendant did not obtain legal representation prior to April 30, 2010, "the Court may conclude that this behavior amounts to a default and proceed to a merits determination."  *Id*.

Finally, Defendant has failed to comply with its discovery obligations under this Court's Discovery Orders and the Federal Rules of Civil Procedure.  In particular, Defendant failed to provide GGA with any response to GGA's requests for production or GGA's interrogatories (collectively "GGA's Written Discovery Requests").  Ward Decl., ¶ 5.  By failing to respond to GGA's Written Discovery Requests, Defendant has not provided any basis to support a finding of non-infringement or invalidity and, therefore, Defendant has effectively admitted that the '706 Patent is valid and that it infringes each of claims 11, 13-15, 17, and 18.

In addition, by failing to participate in this action, Defendant has provided no reasonable basis for its past and current infringement of each of claims 11, 13-15, 17, and 18 of the '706 Patent.  Thus, Defendant has willfully infringed claims 11, 13-15, 17, and 18 of the '706 Patent,

and this action is exceptional under 35 U.S.C. § 285, both of which support not only trebling of GGA's damages (35 U.S.C. § 284), but also an award of attorneys' fees in the amount of $251,571.62 (Ward Decl., ¶¶ 6-12), costs in the amount of $16,813.00 (Ward Decl., ¶  13), prejudgment and post-judgment interest, and entry of a permanent injunction.

## IV.   AUTHORITIES AND ARGUMENT

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed. Cir. 1985) (*en banc*). When evaluating a motion for summary judgment, the record evidence is viewed through the same evidentiary standard that would prevail at trial.  *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001).

### B.   Patent Infringement Standard

The determination of patent infringement is a two-step process.  First, the Court must construe the asserted claims as a matter of law to ascertain their meaning and scope.  *Dawn Equip. Co. v. Kentucky Farms Inc.,* 140 F.3d 1009, 1014 (Fed. Cir. 1998). Second, the claims as construed are compared to the allegedly infringing device.  *Id.*

Patent claim construction is a question of law for the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 391 (1996).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir.

2005) (*en banc*).  Thus, "it is the **claims**, not the written description, which define the scope of the patent right*."  Laitram Corp. v. NEC Corp*., 163 F.3d 1342, 1347 (Fed. Cir. 1998) (emphasis in original); *see also Markman*, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims.").

In construing claims, the words of a claim "are generally given their ordinary and customary meaning."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The Federal Circuit has made clear that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Phillips*, 415 F.3d at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*

The Court can construe the claims in the context of a summary judgment motion. *Markman*, 52 F.3d at 981.  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314; *see also Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation").

After the claims have been construed, the claims as construed are compared to the allegedly infringing device.  *Dawn Equip. Co.,* 140 F.3d at 1014.  To infringe a claim, each claim limitation must be present in the accused product, either literally or equivalently.  *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.,* 74 F.3d 1216, 1220 (Fed. Cir. 1996).  Literal

infringement occurs when the accused device includes each element and limitation of the patent claim as properly construed. *Jergens v. McKasy,* 927 F.2d 1552, 1560 (Fed. Cir. 1991).

**C.    Defendant Literally Infringes Claims 11, 13-15, 17, and 18 of the '706 Patent**

       1.    The '706 Patent is Valid and Enforceable

An issued patent is presumed valid. 35 U.S.C. § 282. Further, the '706 Patent is currently valid, enforceable and subsisting. Tuccillo Decl., ¶ 2. As Defendant has failed to provide GGA with any Preliminary Invalidity Contentions, and has not provided any evidence to overcome the presumption of validity (Ward Decl., ¶¶ 3, 5), GGA submits that the indisputable evidence establishes that the '706 Patent is valid and enforceable.

       2.    Defendant is Infringing Claims 11, 13-15, 17, and 18

After reviewing the '706 Patent, including claims 11, 13-15, 17, and 18, and the file history of the '706 Patent, Yannis Papakonstantinou, as a person of ordinary skill in the art, interpreted the ordinary and customary meaning of the terms in claims 11, 13-15, 17, and 18 and compared his interpretation of those claims to Defendant's computer software system which includes the following components: (1) the GroundRez Switch; (2) the GroundRez GDS; (3) the GroundRez CBT; and (4) the GroundRez Booking System. Tuccillo Decl., ¶¶ 6, 8, 16, 17; Papakonstantinou Decl., ¶¶ 1-8; Ward Decl., ¶¶ 14, 15. As a result of this comparison, it was determined that Defendant's computer system, which includes the GroundRez Switch, the GroundRez GDS, the GroundRez CBT, and the GroundRez Booking System, meets each and every limitation of claims 11, 13-15, 17, and 18 of the '706 Patent. *Id.* Further, Defendant has failed to respond to GGA's Written Discovery Requests or provide any other evidence to controvert GGA's infringement evidence. Ward Decl., ¶ 5. Thus, the indisputable evidence

establishes that Defendant is infringing, and has infringed, claims 11, 13-15, 17, and 18 of the '706 Patent.

3.      Defendant's Infringement is Willful

As established above, Defendant was well aware of the '706 Patent since at least late March, 2007, just 3 months after it was formed.  Tuccillo Decl., ¶ 6.  Defendant, however, immediately began infringing the '706 Patent by copying GGA's patented Saturn System, and in fact continues to this day to infringe the '706 Patent.  Tuccillo Decl., ¶¶ 6-17; Kupper Decl., ¶ 3; Papakonstantinou Decl., ¶¶ 1-8 Ward Decl., ¶¶ 14, 15.  In addition, Defendant has made no effort to defend itself in this action since the Court entered its Amended Docket Control Order, Amended Discovery Order, and lifted the stay in February and March 2010 (Doc. Nos. 43, 44, 46) and has failed to provide invalidity contentions, failed to comply with Local Patent Rule 4-1, and failed to respond to any of GGA's Written Discovery Requests (Ward Decl., ¶¶ 3-5).  As a result, Defendant has provided no reasonable basis whatsoever to justify its infringement of the '706 Patent.  Accordingly, GGA submits that the indisputable evidence establishes that Defendant's infringement of the '706 Patent has been willful.  *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1531-32 (Fed. Cir. 1993) (affirming finding of willfulness based upon defendant's knowledge of the patent, copying of patentee's technology, and continued infringement without reasonable basis for doing so).

4.      GGA's Lost Profits Damages for Defendant's Infringement

Defendant's infringement has damaged GGA in the amount of at least $158,483.00 which represent lost profits calculated based upon GGA's loss of long time clients.[2]  Tuccillo Decl., ¶¶ 4-14.  Over the years, these clients consistently used GGA's services, thereby providing profits

---

[2]      As noted above, due to Defendant's refusal to respond to GGA's Written Discovery Requests, GGA is unable to ascertain, without speculation, all of its damages caused by Defendant's infringement.

to GGA.  Therefore, it was, or should have been, reasonably foreseeable to Defendant that GGA would be injured if it began to compete directly with GGA by offering GGA's patented services to GGA's clients.  Thus, upon Defendant's entry into direct competition with GGA by infringing the '706 Patent, GGA lost revenue which, based upon information within GGA's knowledge, and not based upon anything provided by Defendant due to Defendant's failure to respond to GGA's Written Discovery Requests (Ward Decl., ¶ 5), GGA calculates to be at least $158,483.00 (Tuccillo Decl., ¶¶ 4-13).  *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) (*en banc*).

Further, due to the willfulness of Defendant's infringement and Defendant's litigation misconduct by failing to comply with the Court's local rules, the Court's order regarding obtaining counsel, and by failing to respond to GGA's Written Discovery Requests which could have provided more information for GGA to ascertain the full amount of its damages, GGA submits that the indisputable evidence supports trebling of GGA's lost profit damages of $158,483.00 as permitted by 35 U.S.C. § 284.  *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468-69 (Fed. Cir. 1997) (affirming enhanced damages and attorneys' fees based upon willful infringement, non-responses by defendant, and knowledge of patent); *Reedhycalog UK, Ltd., v. Diamond Innovations, Inc.*, No. 6:08-cv-325, 2010 WL 3238312, at *9-*10 (E.D. Tex. August 12, 2010) (enhancing damages due to attempted copying, no good faith belief of non-infringement, litigation misconduct, and weak evidence of non-infringement, and no remedial efforts taken on the part of defendant);[3] *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 561 F.Supp. 512, 533 (E.D.La. 1982) (enhancing damages as compensation for expenses not susceptible of determination), *aff'd*, 761 F.2d 649 (Fed. Cir. 1985).

---

[3]      For the convenience of the Court, attached hereto as Exhibit E is a true and correct copy of *Reedhycalog UK, Ltd., v. Diamond Innovations, Inc.*, No. 6:08-cv-325, 2010 WL 3238312 (E.D. Tex. August 12, 2010).

Accordingly, GGA respectfully submits that the indisputable evidence supports a damages award of $475,449.00.

5.      GGA is Entitled to Recover its Reasonable and Necessary Attorneys' Fees

Due to Defendant's failure to comply with this Court's orders and local rules regarding discovery, Defendant has engaged in litigation misconduct that has unnecessarily increased the costs and fees incurred by GGA.  These tactics have frustrated GGA's ability to obtain full relief on its claims for patent infringement because GGA is not privy to all of the sales and other revenue obtained by Defendant as a result of its infringement.  In addition, GGA has expended substantial time, effort, and cost in defending against GGA's initial allegations of invalidity in its counterclaims, which Defendant effectively abandoned through its failure to comply with the Court's local patent rules and its failure to respond to GGA's Written Discovery Requests. Accordingly, GGA submits that this action should be deemed exceptional pursuant to 35 U.S.C. § 285 and GGA should be awarded its reasonable and necessary attorneys' fees. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d at 1466-69; *Kloster Speedsteel AB v. Crucibel Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986) (recognizing willfulness and litigation misconduct as a basis to find a case "exceptional" and possible award of attorneys' fees); *Reedhycalog*, 2010 WL 3238312, at *5-*9 (finding case exceptional and awarding attorneys' fees).

To date, GGA has incurred reasonable and necessary attorneys' fees and costs in the amount of $251,571.62 and $16,813.00, respectively.  Ward Decl., ¶¶ 6-13.  The amount of attorneys' fees sought does not include any time expended by counsel for GGA between the dates of May 17, 2010, the date the Court stayed this action (Doc. No. 55) and September 14, 2010, the date the Final Judgment was vacated (Doc. No. 67).  Thus, GGA respectfully requests entry of judgment against Defendant, in the amount of $251,571.62 for GGA's reasonable and

necessary attorneys' fees and in the amount of $16,813.00 for GGA's costs incurred during the prosecution and defense of this action.

> 6.      GGA is Entitled to Prejudgment and Post-Judgment Interest

Interest shall be allowed on any money judgment in a civil case recovered in a district court.  28 U.S.C. § 1961(a).  Prejudgment interest must be awarded and any justification for withholding the award must have a relationship with the award of prejudgment interest itself. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).  The interest rate used to calculate prejudgment interest and the method and frequency of compounding is left to the discretion of the district court.  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1464, 1579-80 (Fed. Cir. 1988).

For the same reasons discussed above for GGA's request for its lost profit damages and enhancement of those damages, GGA requests that it be awarded prejudgment on its damages beginning on the date this action was filed, compounded monthly, and post-judgment interest on all monetary awards, including any award of its attorneys' fees and costs, beginning on the date of entry of a final judgment, compounded monthly.

**D.      GGA is Entitled to a Permanent Injunction**

In seeking a permanent injunction a "plaintiff must demonstrate:  (1) that it has suffered an irreparable injury;  (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;  (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *i4i Ltd. P'ship v. Microsoft Corp.*, 589 F.3d 831, 861 (Fed. Cir. 2010) (affirming this Court's grant of permanent injunction for patent infringement); *Acumed, LLC v. Stryker Corp.*,

551 F.3d 1323, 1327 (Fed. Cir. 2008) (affirming grant of permanent injunction for patent infringement); *Reedhycalog*, 2010 WL 3238312, at \*5-\*9 (permanently enjoining defendant).  In the case at bar, all four factors support issuance of a permanent injunction.

    1.   <u>GGA Has Suffered Irreparable Injury</u>

Defendant portrays itself to customers as a direct competitor of GGA in the global ground reservation services marketplace.  Tuccillo Decl., ¶ 6.   In addition, Defendant was formed in order to compete with GGA and, in so doing, copied GGA's patented Saturn System.  *Id*.  The fact that there is direct competition between parties in a marketplace "weighs heavily in favor of a finding of irreparable injury."  *i4i Ltd. P'ship v. Microsoft Corp*., 670 F.Supp.2d 568, 599 (E.D. Tex. 2009), *aff'd* 598 F.3d 831 (Fed. Cir. 2010); *Mass Eng. Design, Inc. v. Ergotron, Inc*., 633 F.Supp.2d 361, 393 (E.D. Tex. 2009); *Brooktrout, Inc. v. Eicon Networks Corp*., No. 2:03-cv-59, 2007 WL 1730112, at \*1 (E.D. Tex. June 14, 2007).[4]  Courts recognize the high value of intellectual property when it is asserted against a direct competitor in the plaintiff's market and the resulting need to enter an injunction against the competitor.  *Visto Corp. v. Seven Networks, Co*., No. 2:03-cv-333-TJW, 2006 WL 3741891, at \*4 (E.D. Tex. Dec. 19, 2006).[5]

In addition, harm to a patentee's market share and revenues due to infringement is relevant for determining whether the patentee has suffered an irreparable injury.  *i4i Ltd.,*  589 F.3d at 861-62;  *Visto*, 2006 WL 3741891, at \* 4; *Tivo Inc. v. EchoStar Communs. Corp*., 446 F. Supp. 2d 664, 669 (E.D. Tex. 2006).  Here, GGA has lost significant market share and revenues as a result of the direct competition from Defendant's infringing services.  Tuccillo Decl., ¶¶ 6-15.

---

[4]      For the convenience of the Court, attached hereto as Exhibit F is a true and correct copy of *Brooktrout, Inc. v. Eicon Networks Corp*., No. 2:03-cv-59, 2007 WL 1730112 (E.D. Tex. June 14, 2007).

[5]      For the convenience of the Court, attached hereto as Exhibit G is a true and correct copy of *Visto Corp. v. Seven Networks, Co*., No. 2:03-cv-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006).

Defendant was able to compete with GGA and win over certain of GGA clients because Defendant offered these clients services with features covered by GGA's '706 Patent.  Tuccillo Decl., ¶¶ 6, 12.  For example, GGA lost substantial business from Pfizer, Wyeth, British Petroleum, Capital One, and HBO Travel due to Defendant's infringing activities.  *Id*., ¶ 12. GGA was also restricted due to Defendant's exclusive relationships with GetThere and BCD Travel, which were obtained on the premise that Defendant could perform the activities covered by the patent-in-suit.  *Id.*  All of these clients previously sought, and were provided with, services from GGA that were covered by the '706 Patent, and are now obtaining services from Defendant that are identical to the patented services previously provided to these clients by GGA.  *Id.* Defendant would not have obtained these clients from GGA without infringing the patent-in-suit. *Id.*

Defendant and its contractual partners have also touted Defendant's infringing services by distributing press releases and marketing materials promoting Defendant's ability to provide services that are identical to GGA's patent services and, in one case, Defendant references itself as the "first" ground transportation switch in the industry.  Tuccillo Decl., ¶ 8.  However, all of these promotional activities are incorrect because GGA, through its predecessors-in-interest, has been providing these same services under the '706 Patent since 2000 and GGA is the only company permitted to provide the services covered by the '706 Patent.  *Id*., ¶ 5 (GGA has not licensed the '706 Patent), ¶ 8 (GGA is the first provider of services under the '706 Patent).

The aforementioned press release and marketing materials from Defendant provided "validation" to prospective customers that Defendant could be a direct competitor of GGA, all of which adversely impacted GGA's business.  Tuccillo Decl., ¶ 8.  Without infringing GGA's patents, Defendant would not have been in a position to compete with and win the

aforementioned sales from GGA.  *Id*., ¶¶ 6-14.  If Defendant is permitted to continue using GGA's patented inventions to compete against GGA for the same clients and potential clients in the ground transportation market in the future, GGA will continue to be irreparably harmed by losing market share and credibility in the industry.

      2.      <u>GGA's Loss Is Not Compensable Through Money Damages</u>

The loss of market share, brand recognition, and customer goodwill by GGA due to Defendant' continuing infringement are generally recognized as the type of losses that monetary damages are insufficient to cure.  *i4i Ltd.*, 598 F.3d at 862.  Such losses may frequently defy attempts at valuation, particularly when the infringing acts significantly change the relevant market.  *Id.*

GGA was able to secure a strong position in the marketplace for global ground reservation services due to its ownership of the '706 Patent.  Tuccillo Decl., ¶ 4.   The '706 Patent granted GGA a right to differentiate itself from Defendant by preventing its competitor from offering the patented features.  *Id.*, ¶ 5 (no licenses to the '706 Patent), ¶ 12.  Defendant has directly attacked GGA's position in the marketplace by misrepresenting to clients and potential clients that it can provide the identical services as GGA and that it is the "first" to do so.  *Id.*, ¶¶ 8, 12.   GGA's credibility and goodwill with its clients and potential clients have been jeopardized because they have come to rely on GGA's statements that the '706 Patent grants GGA the right to exclude others from providing services that are identical to GGA's services.  *Id.*, ¶ 15.  As a result of Defendant's actions, GGA has been damaged in a manner that monetary damages are insufficient to cure.

Courts often look to a patent owner's decision not to license its competitors, and thus maintain exclusivity, as evidence of the inadequacy of money damages as a remedy.   *Acumed,*

551 F.3d at 1328-29;  *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 505 F.Supp.2d 359, 379

(S.D. Tex. 2007).  Neither GGA nor any of the previous owners of the '706 Patent has licensed

the patent.  Tuccillo Decl., ¶ 5.  By not entering into license agreements, GGA has determined

that its business interests are best served by using the '706 Patent to differentiate itself from its

competitors.  This determination is compelling evidence that monetary damages could not

adequately compensate GGA for Defendant's continued use of its patented features.

Further, this Court has previously recognized that money damages may be an inadequate

remedy when there has been a finding of willful infringement.  *O2 Micro Int'l Ltd. v. Beyond*

*Innovation Tech. Co.,* Civil Action No. 2-04-cv-32 (TJW), 2007 WL 869576, at *2 (E.D. Tex.

March 21, 2007), *overruled on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008)[6]; *Visto Corp*.,

2006 WL 3741891 at *4.  Reckless, intentional infringement should not be rewarded with a

compulsory license - particularly where the patentee has a policy of not licensing its competitors.

As established above, Defendant has willfully infringed the '706 Patent which further supports

issuance of a permanent injunction.

   3.    The Balance of Hardships Favors Issuance of a Permanent Injunction

The balance of hardships weighs in favor of granting a permanent injunction.  GGA

would face ongoing irreparable injury if Defendant's infringement was to continue.  GGA's

primary service, ground transportation reservation assistance, is the identical to, and directly

competes with, Defendant's infringing services.  Each day of Defendant's infringement causes

loss of GGA's business and harm to its reputation as a leader in the industry.  As this harm is

directly caused by Defendant's infringement, issuance of a permanent injunction is appropriate.

*TiVo*, 446 F.Supp.2d at 670.

---

[6]       For the convenience of the Court, attached hereto as Exhibit H is a true and correct copy of *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* Civil Action No. 2-04-cv-32 (TJW), 2007 WL 869576 (E.D. Tex. March 21,2007).

On the other hand, the resulting hardship to Defendant and its clients does not weigh against an injunction, as it is a consequence of Defendant's infringement.  Neither commercial success, nor sunk development costs, should shield an infringer from injunctive relief.  *i4i Ltd.*, 598 F.3d at 863.  Defendant is not entitled to continue infringing simply because it successfully exploited its infringement. *Id*.  "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Acumed,* 551 F.3d at 1330.  Accordingly, the balance of hardships favors issuance of the permanent injunction.

4.     The Public Interest Is Served by Granting Injunctive Relief

The public interest is generally served by protecting patent rights.  *i4i Ltd.*, 598 F.3d at 863; *Broadcom Corp. v. Qualcomm Inc*., 543 F.3d 683, 704 (Fed. Cir. 2009).   Permitting Defendant to continue to offer its infringing services would undermine the incentive for innovation provided by the patent statute.  In addition, when a defendant's services, like those of Defendant in the present case, do not relate to a significant compelling public interest, such as public health, this factor weighs in favor of an injunction.  *i4i Ltd.*, 670 F.Supp.2d at 601; *TiVo*, 446 F.Supp.2d at 670.  Thus, the public's interest in issuance of a permanent injunction supports enjoining Defendant in the present case.

As established above, all of the *eBay* factors support the issuance of a permanent injunction.  Therefore, GGA respectfully requests that Defendant be enjoined as set out in the proposed Final Judgment and Permanent Injunction submitted contemporaneously herewith.

**E.     Defendant's Counterclaims Should Be Dismissed With Prejudice**

In its Answer, Defendant raised counterclaims for declarations of non-infringement and invalidity of the '706 Patent.  Doc. No. 11.  As set out above, it is indisputable that Defendant

21

infringes claims 11, 13-15, 17, and 18 of the '706 Patent.  Thus, GGA submits that Defendant's counterclaim of non-infringement should be dismissed with prejudice.

With respect to Defendant's counterclaim of invalidity, GGA submits that due to Defendant's failure to:  (1) comply with the Court's local patent rules, namely, P.R. 3-3 and P.R. 3-4 regarding Defendant's Preliminary Invalidity Contentions, and P.R. 4-1 regarding claim construction; (2) comply with the Court's order regarding obtaining legal representation; and (3) respond to GGA's Written Discovery Requests, and in light of Defendant's complete lack of any evidence that any of the claims of the '706 Patent are invalid, Defendant's counterclaim of invalidity should be dismissed with prejudice.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Global Ground Automation, Inc. respectfully requests that judgment be entered against Defendant GroundRez, LLC as set forth herein.  For the convenience of the Court, a proposed Final Judgment and Permanent Injunction is submitted contemporaneously herewith.

Respectfully submitted,

Dated:  October 4, 2010

/Douglas R. McSwane Jr. /
Douglas R. McSwane Jr.
Texas State Bar No. 13861300
Potter Minton P.C.
110 N. College, Suite 500
Plaza Tower
Tyler, Texas 75702
Telephone:  (903) 597-8311
Facsimile:  (903)
E-mail:  dougmcswane@potterminton.com

Mark A. Calhoun
Texas State Bar No. 03641500
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Telephone:  (214) 665-3616
Facsimile:  (214) 665-5916
Email:  calhounm@gtlaw.com

Of Counsel:

Mary-Olga Lovett
Texas State Bar No. 00789289
Anthony F. Matheny
Texas State Bar No. 24002543
Greenberg Traurig, LLP
1000 Louisiana Street
Houston, Texas 77021
Telephone:  (713) 374-3583
Facsimile:  (713) 754-7583
Email: mathenya@gtlaw.com
        lovettm@gtlaw.com

John P. Ward
Application for admission
*pro hac vice* pending
E. Patrick Ellisen
James W. Soong
Application for admission
*pro hac vice* pending
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone:  (650) 328-8500
Facsimile:  (650) 328-8508
Email:  wardj@gtlaw.com
        ellisenp@gtlaw.com
        soongj@gtlaw.com

**ATTORNEYS FOR PLAINTIFF**
**GLOBAL GROUND AUTOMATION, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to consented to electronic service and being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 4, 2010.

/Douglas R. McSwane Jr./
Douglas R. McSwane Jr.