**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **GLOBAL GROUND AUTOMATION INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 6:08-cv-374-LED-JDL** |
| **v.** | § | |
| | § | |
| **GROUNDREZ, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Global Ground Automation, Inc.'s ("Global") Motion For Summary Judgment (Doc. No. 68; "MOTION"). The Court held a hearing on November 18, 2010 and heard argument. Having fully considered these arguments, the Court **RECOMMENDS** that Global's motion be **GRANTED-IN-PART** and **DENIED-IN-PART**.

**PROCEDURAL AND FACTUAL BACKGROUND**

Global is the owner of U.S. Patent No. 5,953,706, which is directed at a "data communications system for coordinating reservation data and other information for ground transportation services." MOTION at EX. A, U.S. PATENT NO. 5,953,706 ("the '706 Patent") at 1:13-15. The '706 Patent issued on September 14, 1999, based on a non-provisional patent application filed on October 21, 1997. *Id.* Global acquired the '706 Patent through a chain of assignments. MOTION at EX. A, DECLARATION OF GREGG TUCCILLO ("TUCCILLO DECL.") at ¶ 3. Initially, the named inventor assigned his entire interest in the '706 Patent to Orissa, Inc. in 1999, which then

assigned its interest to Interride, Inc. (later renamed Ground Travel Technology) in 2001. *Id.*

Ground Travel Technology next assigned its entire interest in the '706 Patent to Global on July 22,

2008. *Id.*

Global provides ground reservation services via a software platform named the "Saturn

System," wherein particular users, such as travel agents and corporate travel departments, can

schedule seamless ground transportation services for their clients in disparate locales. *Id*. at 2, 4.

Global's Saturn System performs the requisite steps of method claims 11, 13-15, 17 and 18 of the

'706 Patent. MOTION at EX. B, DECLARATION OF ADAM KUPPER ("KUPPER DECL.") at ¶ 3. Global,

through implementation and exclusive ownership of the '706 Patent, has been able to maintain a

strong position in the global ground reservation services sector. TUCCILLO DECL. at 4.

On September 24, 2008, Global sued Defendant Groundrez, LLC ("Groundrez") for willful

infringement of the '706 Patent. (Doc. No. 1). Pursuant to the Court's docket control order, on

February 6, 2009, Global served its Disclosure of Asserted Claims and Infringement Contentions

and Document Production Accompanying Disclosure as required by Patent Local Rules 3-1 and 3-2.

*See* (Doc. No. 18, Global Notice of Compliance with P.R. 3-1 and 3-2).

On July 13, 2009, all counsel for Groundrez moved the Court for leave to withdraw as

counsel (Doc. No. 28). Groundrez did not oppose the motion. *Id.* The next day, the Court ordered

Groundrez to file a supplemental notice informing the Court of who its new counsel will be, or

informing the Court of when it will obtain new counsel. (Doc. No. 29). At that time, the Court

noted that if Groundrez's counsel were to withdraw, it would be without counsel in the case. *Id.*

Groundrez subsequently notified the Court "that it has not retained new counsel and did not known

when it will do so." (Doc. No. 30). Nonetheless, counsel for Groundrez again requested that their

motion to withdraw as counsel for Groundrez be granted.  *Id.*  The Court ordered the parties, along with a representative from Groundrez, to appear for a status conference.  (Doc. No. 31).

The Court held a status conference in August 2009, during which Mr. Jason Diaz ("Diaz"), Groundrez's CEO and founder, explained that he was unable to pay his attorneys and did not oppose the motion filed by counsel to withdraw.  *See* (Doc. No. 34); (Doc. No. 35).  After discussion with the parties and careful consideration,  the Court granted Groundrez's counsel's motion to withdraw and stayed all deadlines.  *Id.*  Staying all deadlines was explicitly ordered so that the parties had an opportunity to "resolve [the] dispute without further cost to either side and to enable Groundrez to retain alternative counsel, if necessary." (Doc. No. 35) at 2.

When the parties were unable to resolve this dispute through mediation, Groundrez notified the Court of its intention for this case to proceed with Diaz filing invalidity contentions *pro se* on behalf of the limited liability corporation. *See* (Doc. No. 52). Finding that the *pro se* defense of a limited liability corporation potentially amounts to the unauthorized practice of law, the Court ordered Groundrez to obtain new counsel and issued subsequent orders that re-set the deadlines in this case. *See id*. Groundrez failed to comply and the Court again stayed deadlines to promote a potential settlement between the parties. (Doc. No. 55).

On May 26, 2010, the parties were ordered to notify the Court by June 4, 2010 as to whether a settlement had been reached. (Doc. No. 56). If an agreement was not reached, Global was directed to "file a Motion for a merits determination by June 18, 2010 so that the Court can resolve this matter." *Id*. at 2. The parties failed to comply with this Order. Thereafter, on June 29, 2010, the Court issued an Order requiring the parties to show cause by July 12, 2010 as to why this case should remain on the Court's docket. The parties also failed to comply with this deadline. On July

3

19, 2010, the Court issued a Report and Recommendation stating that this case should be dismissed without prejudice "for want of prosecution and for an ongoing failure to comply with Orders of this Court." (Doc. No. 58). All parties had an opportunity to object to this finding and apprise the Court of the what was happening in this case, but again nothing was filed. The Court entered Final Judgment on August 10, 2010. (Doc. No. 60).

Shortly thereafter, Global filed a Motion to Vacate Final Judgment and Reinstate Case pursuant to Federal Rule of Civil Procedure 59(e). (Doc. No. 62). The Court found that the entry of Final Judgment was due to "gross carelessness" of the attorneys involved, but in the interest of justice, granted the motion to vacate final judgment. *Id.* at 5-6.

On October 4, 2010 Global filed the instant Motion. A few weeks later, Groundrez filed a "notice" with the Court stating that Groundrez had been sold to another entity and "wound down" after the entry of Final Judgment but before reopening of the case. (Doc. No. 69). Accordingly, Groundrez asserted that the pending summary judgment motion was "moot." *Id.* at 1. Global filed a response arguing that the motion for summary judgment was not "moot" because this Court retained jurisdiction over this matter according to Delaware Limited Liability Company Law and that Groundrez is still responsible for any outstanding claims subject of a pending action or suit. (Doc. No. 73). Groundrez failed to file a response to Global's motion for summary judgment and did not attend the hearing held before the Court on the same.

On April 7, 2011, the Court, sua sponte, ordered Global to file a brief addressing recent case law regarding whether the invention disclosed in the '706 Patent is drawn to patent-eligible subject matter pursuant to 35 U.S.C. § 101 (Doc. No. 75). Global filed a brief on April 29, 2011 as directed by the Court.

4

**APPLICABLE LAW**

*Patentability*

A patent is presumed valid. 35 U.S.C. § 282; *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 412 (2007). This presumption may be overcome only by clear and convincing evidence. *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and an issue of law. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *aff'd sub nom. Bilski v. Kappos*, 130 S.Ct. 3218 (2010). "Section 101 emphasizes that 'any' subject matter in the four independent categories [process, machine, manufacture, or composition of matter] and 'any' improvement in that subject matter qualify for protection." *Research Corp. Technologies, Inc. v. Microsoft Corp.*, 627 F.3d 859, 867 (Fed. Cir. 2010). Fundamental principles such as "[p]henomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *see also Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (listing three exceptions to patentability: "laws of nature, physical phenomena, and abstract ideas."). But application of an abstract principle may be patentable. *Diamond v. Diehr*, 450 U.S. 175, 187 (1981). Courts, however, may not categorically reject subject matter "because it finds that a claim is not worthy of a patent." *Research Corp.*, 627 F.3d at 867.

*Summary Judgment*

Summary judgment is appropriate when the record, as a whole, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

323–25 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.

*Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  A "genuine issue"

of material fact exists when a fact requires resolution by the trier of fact and a reasonable jury could

resolve a factual matter in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248–49 (1986).

The moving party bears the initial burden of showing absence of a material fact issue, and

doubt is resolved against the moving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970);

*U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (the court should draw all reasonable inferences in

favor of the non-moving party).  If the moving party "fails to meet this initial burden, the motion

must be denied, regardless of the non-movant's response."  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (*en banc*).  If the movant meets this burden, Rule 56 requires the opposing

party to go beyond the pleadings and to show by affidavits, depositions or other admissible evidence

that specific facts exist over which there is a genuine issue for trial.  *EEOC v. Texas Instruments,*

*Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47

(5th Cir. 1996).

When ruling on a motion for summary judgment, the Court is required to view all justifiable

inferences drawn from the factual record in the light most favorable to the nonmoving party.

*Adickes*, 398 U.S. at 158-59; *Merritt-Campbell, Inc.*, 164 F.3d at 961.  However, the Court will not,

"in the absence of any proof, assume that the nonmoving party could or would prove the necessary

facts."  *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995),

*as modified*, 70 F.3d 26 (5th Cir. 1995).  Unless there is sufficient evidence for a reasonable jury to

return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary

judgment must be granted. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-51; *Texas Instruments*, 100 F.3d at 1179.

A motion for summary judgment cannot be granted or denied merely because the non-movant did not file an opposition. *Ervin v. Sprint Communications Co. LP*, 364 Fed.Appx. 114, 118 (5th Cir. 2010) (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995)). The moving party must meet the burden of establishing the absence of a genuine issue of material fact. *Id.*

*Claim Construction*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). The Court may construe the claims "in the context of dispositive motions such as those seeking judgment as a matter of law." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995).

*Infringement*

A determination of infringement requires a two-step analysis. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998). First, the claims must be construed to determine the scope and meaning. *Id.* Next, the properly construed claim must be compared to the accused process or device. *Id.* Literal infringement requires a demonstration that every limitation of the claim is found in the accused device or method. *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103

F.3d 978, 981 (Fed. Cir. 1997).

*Injunction*

A party seeking a permanent injunction must demonstrate, "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Reedhycalog UK, Ltd. v. Diamond Innovations, Inc.*, No. 6:08-cv-325, 2010 WL 3238312, at *5-9 (E.D. Tex. August 12, 2010).

## DISCUSSION

*Patentability*

As directed by the Court, Global filed a brief, in light of recent case law, contending that the '706 Patent is directed to patent eligible subject matter within the scope of 35 U.S.C. § 101. *See* (Doc. No. 81). After careful consideration of Global's brief, the Court has grave concerns regarding the patentability of the claimed subject matter in the '706 Patent. Nonetheless, given the unusual procedural posture of this case and Groundrez's failure to proffer any evidence or argument, the Court cannot conclude that the patent is invalid pursuant to 35 U.S.C. § 101. However, Global is urged to seriously consider the Court's admonition and concerns regarding the patentability of the claimed subject matter in the '706 Patent in any future proceedings.

*Infringement*

Global contends that the '706 Patent in valid and enforceable. MOTION at 12. Global further argues that the claims of the '706 Patent should be interpreted according to their ordinary and

8

customary meaning.  MOTION at 11.  Global proffers the sworn declaration of Dr. Yannis

Papakonstantinou, contending that he is a person of ordinary skill in the field of invention and that

he has interpreted the terms in claims 11, 13-15, 17 and 18 of the '706 Patent according to their

ordinary and customary meaning.  MOTION at 12-13; *see also* EX. C, DECLARATION OF YANNIS

PAPAKONSTANTINOU, ("PAPAKONSTANTINOU DECL.").

Dr. Papakonstantinou reviewed a collection of documents, including the file history of the

'706 Patent, to analyze Groundrez's (1) central booking service; (2) Global Distribution System

Tools; (3) Corporate Booking Tools; and (4) the Booking System (collectively "the Groundrez

System").  *Id.*; PAPAKONSTANTINOU DECL. at ¶ 6.  Based on his review of the documents and

experience in the industry, Dr. Papakonstantinou opines that the Groundrez System infringes claims

11, 13-15, 17 and 18 of the '706 Patent.  *Id.* at ¶ 7.  Dr. Papakonstantinou supports his opinion with

a claim chart which provides a limitation-by-limitation analysis of his opinion.  *Id.* at EX. 2.  Global

further contends that Groundrez was aware of the '706 Patent since 2007; thus the infringement is

willful.  MOTION at 13.

Initially, the '706 Patent is presumed valid and Groundrez has failed to provide any evidence

to overcome the presumption.  35 U.S.C. § 282.  Also, the Court construes the terms of the '706

Patent according to their ordinary and customary meaning.  *Vitronics Corp. v. Conceptronic, Inc.*,

90 F.3d 1576, 1582 (Fed. Cir. 1996) (claim terms are "generally given their ordinary and customary

meaning.").  The Court further finds that Global has carried its burden, via the analysis and opinion

of Dr. Papakonstantinou, that the Groundrez System infringes claims 11, 13-15, 17 and 18 of the

'706 Patent.  Global has provided extensive evidence supporting a finding of infringement of the

'706 Patent.  However, the Court finds that Global has not shown that Groundrez's infringement was

willful.  Accordingly, the Court **RECOMMENDS** that Global's motion for summary judgment of infringement of claims 11, 13-15, 17 and 18 of the '706 Patent be **GRANTED**.  The Court further **RECOMMENDS** that Global's motion for willful infringement be **DENIED**.

*Damages*

Global contends that it is entitled to $158,483.00 in lost profits due to Groundrez's infringement of the '706 Patent.  MOTION at 13; TUCCILLO DECL. at 14.  Global calculated the lost profits figure by determining the difference between the number of transactions processed by Global from its major clients during the years 2008-2010 and the average number of transactions processed by Global in the years 2005-2007, before Groundrez entered the market with its infringing technology and actively courted Global's clients.  *Id.*  Global further contends that the this number accounts for the average decrease in demand due to the downturn in the economy during the years 2008-2010.  *Id.*  Global next contends that after determining the decrease in the number of transactions, that number was multiplied by $2.00, representing the average lost profit per transaction, to arrive at the final number.  *Id.*; *Id.* at Ex. 6.

Global also contends that the lost profits number should be trebled due to Groundrez's alleged willful infringement and that this action should be deemed exceptional pursuant to 35 U.S.C. § 285.  *Id.* at 14-15.  As such, Global requests that it be awarded its reasonable and necessary attorney's fees for, among other things, Groundrez's failure to participate in this case.  *Id.* at 15.  Global also argues that it is entitled to prejudgment and post-judgment interest.  *Id.* at 16.

The Court finds that Global has sufficiently carried its burden, via the evidence submitted, that it is entitled to $158,483.00 in lost profits as a result of Groundrez's infringement of the '706 Patent.  The Court further finds that Global has not sufficiently demonstrated that this case should

be deemed exceptional under 35 U.S.C. § 285.  While Global contends that Groundrez has been unresponsive in this case, the Court notes that Global was unresponsive to the Court's Orders and initial dismissal of the case for a failure to prosecute by both parties.  *see supra* pages 3-4.  Only after the Court entered Final Judgment did Global awake from its slumber and move the Court to vacate judgment and proceed to a merits determination.  *Id.*

Additionally, Global is not entitled to trebled damages because the Court did not find willful infringement.  As such, the Court **RECOMMENDS** that Global's motion for lost profits in the amount of $158,483.00 be **GRANTED**.  Further the Court **RECOMMENDS** that Global's motion for exceptional case, attorney's fees and  trebled damages be **DENIED**.

Section 284 of the Patent Act indicates that a court should award interest in patent cases after a finding of infringement. 35 U.S.C. § 284.  The Supreme Court has held that, "prejudgment interest should be ordinarily awarded" when a plaintiff in a patent infringement suit prevails on his claim. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983) (awarding prejudgment interest unless there is significant justification for withholding such an award, such as a delay in bringing suit against the infringer).  The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty instead of infringing. *z4 Tech., Inc. v. Microsoft Corp.*, 2006 WL 2401099, at *26 (E.D. Tex. Aug. 18, 2006) (quoting *Beatrice Foods v. New England Printing*, 923 F.2d 1576, 1580 (Fed. Cir. 1991)).  The interest rate used to calculate prejudgment interest and the method and frequency of compounding is left to the discretion of the district court. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *z4 Tech.*, 2006 WL 2401099, at *26.

Courts have routinely applied both the U.S. Treasury Bill rate and the prime rate, as well as

both annual and quarterly compounding in determining pre-judgment interest. *See, e.g. Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed. Cir. 1997) (U.S. Treasury Bill rate compounding annually); *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72 DF, 2010 WL 5140718, at *6 (E.D. Tex. Sept. 27, 2010) (prime rate compounded annually); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-83 (Fed. Cir. 1988) (prime rate compounded quarterly). Accordingly, the Court finds that Global should be awarded prejudgment interest on the damages award of $158,483.00, at the average prime rate, compounded quarterly, from the date of infringement to the date of final judgment. *See Bio-Rad Labs v. Nicolet Instrument, Corp.*, 807 F.2d 964 (Fed. Cir. 1986); *z4 Tech.*, 2006 WL 2401099, at *26; *NTP Inc. v. Research in Motion, Ltd.*, 270 F.Supp.2d 751, 763 (E.D. Va. 2003) (stating that prime rate "is a conservative, middle-of-the-road approach that takes into account normal market fluctuations").

The Court also finds that Global is entitled to post-judgment interest to be paid on the entire sum calculated pursuant to 28 U.S.C. § 1961 for any time between entry of Final Judgment and the date upon which Global receives payment from Groundrez. Accordingly, the Court **RECOMMENDS** that Global's motion for prejudgment and post-judgment interest be **GRANTED**.

*Injunction*

Global contends that all four factors under *eBay v. MercExchange* support issuance of a permanent injunction. MOTION at 17.

*Irreparable Injury*

Groundrez entered the ground transportation reservation services industry in 2006 and successfully competed for an exclusive relationship with the leading corporate booking tool partner for U.S. corporate clients. TUCILLO DECL. at ¶ 6. Via this exclusive relationship, Groundrez had

access to 40% of corporate clients in the United States and was able to immediately position itself

as a direct competitor to Global (and Global's predecessor-in-interest).  *Id.*   As such, the parties in

this case are direct competitors and this strongly supports Global's assertions that there is irreparable

injury.  As courts in this district routinely find, "intellectual property is quite valuable when it is

asserted against a competitor in the plaintiff's market."  *Brooktrout, Inc. v. Eicon Networks Corp.*,

No. 2:03-cv-59, 2007 WL 1730112, at *1 (E.D. Tex. June 14, 2007); *Visto Corp. v. Seven Newtorks,*

*Inc.*, 2006 WL 3741891, at *4 (E.D. Tex Dec. 19, 2006).

Further, the loss of market share due to the availability of infringing products favors a

finding of irreparable injury.  *Tivo v. EchoStar Communications, Corp.*, 446 F.Supp.2d 664, 669

(E.D. Tex. 2006) *rev'd on other grounds, Tivo v*. *EchoStar Communications, Corp.,* 516 F.3d 1290

(Fed. Cir. 2008).  The uncontroverted facts provided by Global demonstrate that Groundrez actively

solicited  and was successfully awarded a vendor contract for Global's second largest account.

Tucillo Decl. at ¶ 9.  Groundrez was able to secure this contract by promising identical services

as Global, with the undisputed facts demonstrating that this required infringing Global's '706 Patent.

*Id.* at 9-10.  Groundrez also solicited many of Global's other clients.  *Id.*  Groundrez's marketing

materials claim to provide services identical to Global's, effectively attacking Global's position as

a market leader, but such a claim required Groundrez's technology to infringe the '706 Patent.  *Id.*

at 9-13.  Accordingly, the Court finds that Global will suffer irreparable injury absent an injunction.

### *Inadequate Remedies at Law*

The loss of market share, brand recognition and customer goodwill is not easily valued; thus

they are recognized as the type of losses that monetary damages are insufficient to cure.  *i4i Ltd.*

*P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).  Prior to Groundrez entering the

13

market with its infringing technology, Global (and Global's predecessor-in-interest) enjoyed a strong position in the global ground reservation services market. TUCILLO DECL. at ¶ 4. By infringing on Global's '706 Patent, Groundrez was able to directly, and improperly, take a bite out of Global's market share. Global relied heavily on its ability to provide a unique solution via ownership and implementation of the method disclosed in the '706 Patent. *Id.* at 5. Accordingly, Groundrez's assertion that it was able to provide identical services to Global's via infringing technology devalued the '706 Patent and harmed Global's brand recognition and goodwill.

A patentee's unwillingness to license to its competitors often is used as evidence of an attempt to maintain exclusivity and of the inadequacy of money damages as a remedy. *Acumed, LLC v. Stryker Corp.*, 551 F.3d 1323, 1328-29 (Fed. Cir. 2008). Global has never licensed the '706 Patent, using its exclusive ownership as a way to differentiate itself from its competitors. TUCILLO DECL. at ¶ 5. Global's unwillingness to license the '706 Patent weighs heavily in the favor of a finding that monetary damages are not adequate.

Additionally, Global is not assured that it can collect monetary damages. Groundrez's assets have been acquired by another entity and the company has been wound down. *See* (Doc. No. 69). Global contends that it will seek satisfaction of any judgment from the assets Groundrez presumably set aside in the course of its winding down as required by Delaware Limited Liability Law. *See* (Doc. No. 73) at 2-3. Nonetheless, assuming Groundrez has not set aside sufficient funds to satisfy the monetary judgment against it, injunctive relief will allow Global to halt any entity that acquired Groundrez's technology assets that may be implementing the infringing technology and stem any further erosion of Global's market share and reputation.

*Balance of Hardships*

14

The balance of hardships factor also favors granting injunctive relief. Groundrez no longer exists (Doc. No. 69); thus, it will suffer no hardship from the granting of an injunction against its further operation of the Groundrez System. Moreover, the Court has not been provided with any evidence that the entity that acquired Groundrez's assets is operating its ground transportation service or that it will suffer any harm from granting Global injunctive relief. On the other hand, Global has suffered a loss of market share, reputation and clients as a result of Groundrez's infringement. Without injunctive relief, Global may be unable to persuade its former clients that it provides the exclusive benefit of a system disclosed in the '706 Patent. An injunction will not only allow Global to approach its former clients and solicit their business with a unique selling point and serve to revitalize Global's reputation, but will also put other potential infringers on notice of the '706 Patent and Global's right to exclude.

*Public Interest*

An injunction will not harm the public. The public interest is well-served by parties successfully enforcing their patent rights. *i4i, Ltd.*, 598 F.3d at 863 ("[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects"). The technology covered by the '706 Patent does not implicate public health or safety concerns. *Id.* at 601. Moreover, as previously explained, Groundrez has effectively ceased operations; presumably the injunction will have little effect on public. Accordingly, this factor also favors a permanent injunction.

As such, Global would suffer irreparable injury in the absence of injunctive relief and monetary damages are inadequate to compensate for that injury. Further, the balance of hardships

between Global and Groundrez in granting a permanent injunction favors Global.  Lastly, the public interest would not be disserved by a permanent injunction in favor of Global.  Accordingly, the Court hereby **RECOMMENDS** Global's motion for a permanent injunction be **GRANTED** and that Groundrez be permanently enjoined from operating the Groundrez System that infringes method claims 11, 13-15, 17 and 18 of the '706 Patent.

*Groundrez Counterclaims*

Global contends that Groundrez's counterclaims for non-infringement and invalidity of the '706 Patent should be dismissed with prejudice because Groundrez has failed to comply with the Court's orders and local rules.  MOTION at 21-22.  The Court finds that under the current procedural posture, dismissal with prejudice is unwarranted.  As such, the Court **RECOMMENDS** that Groundrez's counterclaims be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court hereby **RECOMMENDS** that: (1) Global's summary judgment motion for infringement of claims 11, 13-15, 17 and 18 of the '706 Patent be **GRANTED,** with damages in the amount of $158,483.00 to be awarded for lost profits; (2) Global's motion for prejudgment and post-judgment interest be **GRANTED** and (3) Global's motion for a permanent injunction be **GRANTED**.  The Court also **RECOMMENDS** Global's motions for willful infringement, exceptional case under 35 U.S.C. § 285, and attorney's fees be **DENIED**.  Further, the Court **RECOMMENDS** that Groundrez's counterclaims be dismissed  without prejudice.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in this report.  A party's failure to file written objections to the findings, conclusions and recommendations contained in this

16

Report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 11415. 1430 (5th Cir. 1996) (en banc).

**So ORDERED and SIGNED this 29th day of June, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE