**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| GLOBAL GROUND AUTOMATION, INC., | § § § | |
| | § | **C.A. No.  6:08-cv-00374-LED-JDL** |
| Plaintiff, | § § | |
| v. | § § | |
| ORISSA HOLDINGS, LLC, GROUND MANAGEMENT HOLDINGS, LLC, individually and dba GROUNDSPAN,  and GROUNDWIDGETS, | § § § § § | |
| Defendants. | § § | |

---

**GLOBAL GROUND AUTOMATION, INC.'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE FOR PRELIMINARY AND PERMANENT INJUNCTION**

---

Global Ground Automation, Inc. ("Plaintiff" or "Global") hereby files this *Ex Parte* Application for Temporary Restraining Order, Order for Expedited Discovery, and Order to Show Cause for Preliminary and Permanent Injunction and Memorandum in Support Thereof pursuant to Rule 65 of the Federal Rules of Civil Procedure, and, in support respectively shows:

**I.      INTRODUCTION**

Global and Defendants Orissa Holdings, LLC ("Orissa"), Ground Management Holdings, LLC ("GMH"), GroundWidgets, GroundSpan International, Inc. ("GroundSpan") (collectively, "Defendants") are competitors in the ground transportation reservation services industry.  Orissa and GMH acquired assets and software from GroundRez, LLC ("GroundRez") in August of 2010, in the midst of patent litigation between GGA and GroundRez.  Shortly thereafter, GGA

1

obtained a final judgment and permanent injunction against GroundRez despite a last-minute effort to intervene by Orissa and GMH.  The Final Judgment ("Judgment") was signed by Judge Leonard Davis on September 20, 2011 and declares:

- Defendant GroundRez, LLC ("GroundRez") is found to have unlawfully infringed claims 11, 13-15, 17, and 18 of U.S. Patent No. 5,953,706 ("the '706 patent").

- The '706 patent is valid and enforceable.

- GroundRez is permanently enjoined from operating its central booking service, Global Distribution System Tools, Corporate Banking Tools, and Booking System (collectively the "GroundRez System") that infringe claims 11, 13-15, 17, and 18 of the '706 patent.

(Doc. 94 in No. 6:08-cv-374-LED-JDL, attached hereto as Exhibit A-3).

Defendants now own and operate the GroundRez System that was found to infringe the '706 Patent.  Although Defendants Orissa and GMH are fully aware of the Judgment, they have thumbed their nose at it and the Court, using entities GroundWidget and GroundSpan to continue to infringe the '706 Patent.  In so doing, they have stolen numerous clients from GGA. Defendants' infringement also resulted in Defendants entering into various exclusive contracts with other parties that resulted in GGA being unable to compete in areas of the industry that are covered by the '706 Patent.  As a result of Defendants' continued infringement, GGA has continued to lose profits.  *See* Exhibit A, Declaration of Adam Kupper ("Kupper Decl."), at ¶12.

Due to Defendants' knowledge of the validity and enforceability of the'706 Patent and their blatant disregard of it and the Judgment, GGA seeks a Temporary Restraining Order enforcing the Judgment.  GGA also seeks findings of contempt, willful infringement by Defendant, trebling of its damages, a finding that this case is exceptional to support an award of attorneys' fees, recovery of its costs, prejudgment and post-judgment interest, and entry of a preliminary and permanent injunction preventing Defendants from continuing their infringement of the '706 Patent.

2

## II.     BACKGROUND FACTS

### A.  GroundRez Litigation and Judgment

The underlying injunction sought to be enforced against Defendants was originally issued in C.A. No. 6:08-cv-374-LED-JDL, a case mired in unusual procedural history.  On September 24, 2008, Plaintiff sued GroundRez, LLC ("GroundRez") for willful infringement of U.S. Patent No. 5,953,706. (Doc. No. 1).  On July 13, 2009, all counsel for GroundRez moved for leave to withdraw as counsel without objection from GroundRez. *Id.* The Court held a status conference to discuss GroundRez's counsel during which Jason Diaz ("Diaz"), GroundRez's CEO and founder, explained that he was unable to pay his attorneys and did not oppose the motion filed by counsel to withdraw. The Court granted GroundRez's counsel's motion to withdraw and stayed all deadlines such that the parties had an opportunity to "resolve [the] dispute without further cost to either side and to enable GroundRez to retain alternative counsel, if necessary." (Doc. No. 35, at 2).

After an attempt at mediation, GroundRez notified the Court that it wished to proceed with Diaz filing invalidity contentions *pro se.* (Doc. No. 52). The Court ordered GroundRez to obtain new counsel and issued subsequent orders that re-set deadlines. *See id*. GroundRez failed to comply, and the Court again stayed deadlines to promote a potential settlement between the parties. (Doc. No. 55).  On May 26, 2010, the parties were ordered to notify the Court by June 4, 2010 as to whether a settlement had been reached. (Doc. No. 56).  If an agreement was not reached, Global was directed to "file a Motion for a merits determination by June 18, 2010 so that the Court can resolve this matter." *Id*. at 2.  The parties failed to comply with this Order. Accordingly, on June 29, 2010, the Court issued an Order requiring the parties to show cause by July 12, 2010 as to why this case should remain on the Court's docket. The parties also failed to

3

comply with this deadline. On July 19, 2010, the Court issued a Report and Recommendation stating that this case should be dismissed without prejudice "for want of prosecution and for an ongoing failure to comply with Orders of this Court." (Doc. No. 58).  Although all parties had an opportunity to object to this finding and update the Court, nothing was filed. The Court entered Final Judgment on August 10, 2010. (Doc. No. 60).  Shortly thereafter, Global filed a Motion to Vacate Final Judgment and Reinstate Case pursuant to Federal Rule of Civil Procedure 59(e). (Doc. No. 62). The Court granted the motion to vacate final judgment on September 14, 2010. (Doc. No. 67).

On October 4, 2010 Global filed a motion for summary judgment (Doc. 68).  A few weeks later, GroundRez filed a "notice" with the Court stating that GroundRez had been sold to another entity and "wound down" after the entry of Final Judgment but before reopening of the case. (Doc. No. 69).  Accordingly, GroundRez asserted that the pending summary judgment motion was "moot." *Id*. at 1.  Global filed a response arguing that the motion for summary judgment was not "moot" because the Court retained jurisdiction over this matter according to Delaware Limited Liability Company Law and that GroundRez is still responsible for any outstanding claims subject of a pending action or suit. (Doc. No. 73).  GroundRez failed to file a response to Global's motion for summary judgment and did not attend the motion hearing before the Court.

Magistrate Judge John D. Love issued a Report and Recommendations recommending Global's Motion for Summary Judgment be granted in part and denied in part (Doc. 82).  This prompted Orissa Holdings, LLC ("Orissa") and Ground Management Holdings, LLC's ("GMH") (collectively "Intervenors") to appear and file a Motion to Intervene and Vacate Report and

Recommendation (Doc. No. 83) two weeks later.   After briefing by Intervenors and GGA, Magistrate Love denied Intervenor's Motion to Intervene and Vacate Report (Doc. No. 92).

Judge Davis adopted Magistrate Love's Report and Recommendation, ruling that GroundRez willfully infringed claims 11, 13-15, and 17-18 of the '706 Patent.   Specifically, in the Final Judgment, in addition to granting lost profits damage and dismissing GroundRez's counterclaims, Judge Davis ordered:

- Defendant GroundRez, LLC ("GroundRez") is found to have unlawfully infringed claims 11, 13-15, 17, and 18 of U.S. Patent No. 5,953,706 ("the '706 patent").

- The '706 patent is valid and enforceable.

- GroundRez is permanently enjoined from operating its central booking service, Global Distribution System Tools, Corporate Banking Tools, and Booking System (collectively the "GroundRez System") that infringe claims 11, 13-15, 17, and 18 of the '706 patent. (Doc. 94).

### B.  Defendants' Continuing Infringement

The GroundRez webpage, www.groundrez.com, has been replaced by www.groundspan.com, and a web traveler will be redirected to GroundSpan upon typing the GroundRez url address.   *See* Exhibit B, Declaration of Pamela Ferguson at ¶6.   However, a Google search for GroundRez pulls up Ground Rez pages such as "Company Background," and "Products," which are still hosted on www.groundrez.com but now have a GroundSpan banner at the top of the webpage and a 2014 copyright mark with GMH, LLC (GroundSpan) at the bottom of the webpage.   *Id.* at ¶7.   It's unclear whether the GroundRez pages are for GroundRez or for GroundSpan, given that they had GroundRez web addresses but GroundSpan headings and footers.   *Id.* at ¶8.   The GroundSpan webpage looks almost identical to the GroundRez webpages, with the same banner at the top, and it is evident to even a layperson that GroundRez and GroundSpan are one in the same and doing the exact same thing.   *Id.* at ¶9.

GroundSpan offers nearly identical services as those offered by GroundRez that were found to infringe the '706 Patent.  Specifically,

- GroundSpan's "Corporate online booking tool interface" corresponds to GroundRez's Corporate Banking Tools.

- GroundSpan's "GDS Tool" corresponds to GroundRez's Global Distribution System Tools.

- GroundSpan's "Mobile" and "concur" correspond to GroundRez's central booking service and Booking System.  See Kupper Decl., at ¶11.  In more detail, GroundRez/GroundScope previously offered GroundSmart (described as "A full reporting suite that tracks booking and spend by vendor, department, traveler , mode, and geography").   *Id*.   GroundSpan currently offers GroundSmart. GroundSpan has a "Multi-Mode Reservation Engine" for "Reporting on commissions, vendor utilization, all trips details, passengers, key trip combinations"   (see   http://www.groundwidgets.com/agency_connectivity features).  *Id*.

- GroundRez/GroundScope previously offered Corporate Booking Tool, GDS Tool and Mobile Tool, which corresponds to "Corporate online booking tool interface", "GDS Tool", "Mobile" marketed as part of GroundSpan on GroundWidgets. *Id*.

- Like the infringing GroundRez product, GroundSpan has a product that integrates with concur (a booking tool for business travel and expense management).  *Id*.

- Like the infringing GroundRez product, GroundSpan provides extensive reporting/measurement features, comprising the most unique feature of Patent '706: "Reporting/Measurement - Our reporting suite provides "visibility to spend" reporting, booking volumes, transactions by market and much more. For every reservation we record hundreds of data points – including everything from the passenger name to the longitude and latitude of the pickup location!  That's a lot of information, and our customized reporting suite delivers it in a simple, consolidated easy to digest and manage format." http://www.groundspan.com/Corporate/Products.aspx.

Thus, GroundSpan is essentially the services of GroundRez/GroundScope product found to infringe the '706 Patent offered under a slightly modified name.  This is easily shown by comparing claim 11 of the '706 Patent with the above features of the GroundSpan product touted on GroundSpan's own website.  Claim 11 of Patent '706 includes:

A method for routing a transportation request between at least two transportation network subscriber systems, each of said at least two transportation network subscriber systems having at least one terminal for controlling transportation reservations in geographical areas, wherein a first subscriber system controls said transportation reservations in a first geographical area, the method comprising:

…

**confirmation that said second subscriber system has completed performance of said transportation request**.

*See* Claims Chart from GroundRez litigation, attached hereto as Exhibit A-2 (emphasis added).  Defendants are continuing their willful infringement of the '706 Patent in complete disregard of the Judgment issued in the GroundRez litigation.

### C.  Binding Effect of the Judgment on Defendants

Defendants are bound by the Judgment and cannot claim ignorance or hide their infringement behind different entities, GroundWidgets and GrounSpan.  Under the Federal Rules of Civil Procedure, an injunction binds the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).  FED. R. CIV. P. 65(d)(2).  Of import, Rule 65 does not limit the court's authority to bind people but expounds on and codifies it; it "was intended to embody 'the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in privity with them, represented by them or subject to their control.'" *United States v. Hall,* 472 F.2d 261, 278 (5th Cir. 1972)(quoting *Regal Knitwear Co. v. NLRB*, 1945, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661).  A nonparty is bound by an injunction if there is an express or implied legal relationship between a party to the litigation and the nonparty.  *See Harris County, Tex. v. CarMax Auto Superstores Inc*., 177 F.3d 306, 43 Fed. R. Serv. 3d 1124 (5th Cir. 1999).  Furthermore, an injunction may survive the dissolution of the corporation at which it is directed and continue to bind any successor in interest to the original

defendant. *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998).

Defendants are being run by Tony Bonanno and Apurva, both of whom were involved in the underlying litigation.   Bonanno was President of GroundRez throughout the GroundRez litigation, and he is also the President and Founder of GMH and GroundSpan.  *See* Declaration of Pamela Ferguson, at ¶5.  Global disclosed Patel, inventor of the '706 Patent, as a person with knowledge of relevant facts in the underlying litigation on March 25, 2010, specifically identifying facts related to conception and reduction to practice of inventions claimed in the '706 Patent.   Declaration of Pamela Ferguson, at ¶3.   Bonanno and Patel certainly have intimate knowledge of the underlying litigation and the Judgment yet are now infringing the '706 Patent with the same GroundRez systems at GroudSpan.

Furthermore, Orissa and GMH are bound by their knowledge of and interest in the subject matter of the litigation as well as their participation in the proceedings therein; therefore they are bound by the Judgment.   Specifically, on October 26, 2010, Jason Diaz, the CEO of GroundRez, LLC, notified the Court that its assets were acquired by another entity and attached a copy of the Delaware Certificate of Cancellation, contending that because of the entity's dissolution, Global's Motion for Summary Judgment was "rendered moot."   Orissa and GMH knew of the Final Judgment issued on August 10, 2010, so they were aware of the existence of the lawsuit; they also were aware the Court ordered a brief on subject matter patentability in April of 2011.   (Doc 83 at 2-3).   In Mr. Diaz's notice of GroundRez's cancellation, he did not state who purchased the assets of GroundRez, nor did any other entity appear to intervene until July 13, 2011, a mere two weeks after Magistrate Love issued his Report and Recommendation to partially grant Global's Motion for Summary Judgment.   Patel sought to intervene in the

GroundRez litigation on July 13, 2011, as the Managing Member of Orissa and GMH.   In his Declaration in Support of the Motion to Intervene, Mr. Patel acknowledged that "Orissa and GMH have significant interests relating to the Software, the use of which has been the subject of this action."  (Doc. 83-1).   Ultimately Orissa and GMH were not permitted to intervene.   In denying their Motion to Intervene, Magistrate Love described their involvement with and acquisition of GroundRez:

> Orissa and GMH are both run by the same Managing Member, Mr. Apurva Patel, who is also the named inventor of the '706 patent. DECLARATION OF APURVA PATEL (DOC. NO. 83-1)("PATEL DECL."), AT ¶ 1. Orissa is a "research and development company" that provides technology through affiliates such as GMH to clients and partners in the ground transportation industry. *Id.* at ¶¶ 4-5. On August 13, 2010, GMH purchased various assets from GroundRez including GroundRez's trade name and customer list. *Id.* at 6. On August 18, 2010, Orissa entered into a license and purchase agreement with Blue Star Infotek (UK) Limited and its parent company, Blue Star Infotech Limited (India) (collectively "Blue Star"), the developers of the GroundRez software involved in this action. *Id.* at ¶ 7.

> Prior to the August 18, 2010 agreement, Blue Star had filed suit against GroundRez in the Southern District of New York in April 2010 "for copyright infringement, [breach] of contract and other relief based on GroundRez's alleged failure to pay substantial sums owed to Blue Star under a development agreement . . ." signed by GroundRez and Blue Star. PATEL DECL., AT ¶ 8. The suit further alleged that transfer of ownership of the infringing software was expressly conditioned on GroundRez's "full and final payment to Blue Star." *Id*.

> As part of the August 18, 2010 agreement, Orissa agreed to satisfy GroundRez's financial obligations to Blue Star such that Blue Star would transfer title and all rights in the software to Orissa by December 2011. *Id*. at ¶¶ 8-9. After acquiring the rights to the software, GMH begain using "a portion of that software (as enhanced by Orissa) to offer services to its customers in the ground transportation business[.]" MOTION AT 2-3. On July 13, 2011, within the time frame permitting objections to the June 29, 2011 Report and Recommendation in this case, Orrisa and GMH filed this motion seeking to intervene pursuant to Federal Rule of Civil Procedure 24.  (Doc. 92 at pg. 4-5).

Magistrate Love also pointed out that Orissa and GMH knew that GroundRez was involved in litigation regarding one of its essential assets, the transportation software, without the benefit of counsel, and although they purchased the assets after direct negotiations they did

nothing to protect them in the litigation.  *Id*. at 8.  In light of Orissa and GMH's concessions, he continued, "the Court is at a loss to rationalize Intervenors' failure to follow the progression of a case where the value of a newly purchased asset was clearly implicated. Perhaps even more baffling is Intervenors' contention that these assets were adequately protected by an absentee defendant proceeding without counsel." *Id*. at 11.

## III.  ARGUMENT AND AUTHORITIES

### A.  Global is Entitled to a Temporary Restraining Order

Global is likely to prevail against Defendants on the merits and obtain permanent injunctive relief enforcing the Judgment.  Furthermore, Global has no adequate remedy at law because the substantial damage and harm from Defendants' conduct are incalculable and a money judgment could not serve as adequate compensation for the wrong inflicted on Global.

Global is suffering irreparable harm because of Defendants' ongoing infringement of the '706 Patent in violation of the judgment.  If Global is not granted a Temporary Restraining Order, it will suffer imminent irreparable harm.  Defendants are the only significant direct competitor of GGA, which means their continued infringement substantially impacts GGA's business.  See Kupper Decl., at ¶12.  Specifically, GGA lost $329,000 of annual recurring revenue to Defendants in 2014, comprised of accounts with Sanofi, Serono, Bayer, Citadel, Alix Partners, Heidrick & Struggles, Novo Nordisk, FM Global, FCM Travel Solutions (Multiple accounts), TJX Companies, Parexel, and Vertex.  *Id*.  If Defendants were no longer in existence, then their business would most likely go to GGA.  *Id*.  The harm done to GGA by Defendants' infringement is substantial.   *Id*.  Furthermore, GroundRez was formed in order to compete with GGA and, in so doing, copied GGA's patented Saturn System. *Id*. at ¶8.  During the underlying litigation, Orissa purchased assets from GroundRez and acquired rights in the Transportation Software that was declared to infringe the '706 Patent, setting itself up as a direct competitor of

GGA.  (Doc. 83).  Orissa and Ground Management Holdings, LLC acknowledged that their entire business would be threatened absent permission to intervene, which they were not granted. (Doc. 83 at p. 9).  The fact that there is direct competition between parties in a marketplace "weighs heavily in favor of a finding of irreparable injury." *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F.Supp.2d 568, 599 (E.D. Tex. 2009), *aff'd* 598 F.3d 831 (Fed. Cir. 2010); *Mass Eng. Design, Inc. v. Ergotron, Inc.*, 633 F.Supp.2d 361, 393 (E.D. Tex. 2009); *Brooktrout, Inc. v. Eicon Networks Corp.*, No. 2:03-cv-59, 2007 WL 1730112, at *1 (E.D. Tex. June 14, 2007). Courts recognize the high value of intellectual property when it is asserted against a direct competitor in the plaintiff's market and the resulting need to enter an injunction against the competitor. *Visto Corp. v. Seven Networks, Co.*, No. 2:03-cv-333-TJW, 2006 WL 3741891, at *4 (E.D. Tex. Dec. 19, 2006).

In addition, harm to a patentee's market share and revenues due to infringement is relevant for determining whether the patentee has suffered an irreparable injury. *i4i Ltd.,* 589 F.3d at 861-62; *Visto*, 2006 WL 3741891, at * 4; *Tivo Inc. v. EchoStar Communs. Corp.*, 446 F. Supp. 2d 664, 669 (E.D. Tex. 2006). Here, GGA has lost significant market share and revenues as a result of the direct competition from Defendants' infringing services. Kupper Decl., ¶¶12-13.  Specifically, GGA lost $329,000 of annual recurring revenue to Defendants in 2014, comprised of accounts with Sanofi, Serono, Bayer, Citadel, Alix Partners, Heidrick & Struggles, Novo Nordisk, FM Global, FCM Travel Solutions (Multiple accounts), TJX Companies, Parexel, and Vertex.  *Id*.  If Defendants were no longer in existence, then their business would most likely go to GGA.  The harm done to GGA by Defendants' infringement is substantial.  *Id*.

### 1.  Defendants are in Contempt.

A Temporary Restraining Order is also warranted because good cause exists for a finding of civil contempt and an order to prevent further violations.  Civil contempt proceedings arise

under 18 U.S.C. §401(3), which states in pertinent part:  "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." *Int'l Star Registry of Illinois, Ltd. v. SLJ Group, Ind.*, 325 F.Supp.2d 879, 882 (N.D.Ill. 2004).  The purpose of a civil contempt proceeding is either enforcement of a prior court order or compensation for losses suffered as a result of non-compliance with that order.  *Id.* (citation omitted).  The complaining party must prove by clear and convincing evidence that the opposing party violated a court order.  *Id.* at 883.

To hold a party in civil contempt, the district court must be able to point to a decree from the court that sets forth in specific detail an unequivocal command that the party or witness in contempt violated.  *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 738 (7th Cir. 1999) (citations omitted).  While a party must prove by clear and convincing evidence that the opposing party violated an injunction, the violation need not be willful if the opposing party has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) (citations omitted).

Further, this Court has inherent authority to enforce an injunction through contempt proceedings.  *Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d 737, 744 (7th Cir. 2007) (citing *Spallone v. United States*, 493 U.S. 265, 276 (1990) (reaffirming the "axiom that courts have inherent power to enforce compliance with their lawful orders" through civil contempt") (internal citation omitted)).  "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such

fine must of course be based upon evidence of complainant's actual loss. . . ." *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947) (citation and footnote omitted).

A court has broad discretion to fashion a remedy based upon the nature of the harm and probable effect of alternative sanctions. *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988). This broad discretion includes awarding the moving party its attorneys' fees and costs for the preparation and prosecution of a contempt action. *South Suburban House Ctr. v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999). Moreover, an award of expenses and fees in civil contempt proceedings is independent of any award of compensatory damages. *Commodity Futures Trading Com. v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981).

A party which fails to act diligently in order to comply with an injunction can expect to be subjected to sanctions. For example, in *Int'l Star Registry of Illinois, Ltd. v. SLJ Group, Ind.*, 325 F.Supp.2d 879 (N.D.Ill. 2004), the Court found that the defendant's continued use of the plaintiff's trademark in Internet advertising, in violation of an injunction, subjected the defendant to a finding of contempt and ordered the defendant to pay the plaintiff's reasonable attorney's fees generated in connection with the contempt motion. *Id.* at 883-85. Similarly, in *In re Aimster Copyright Litigation*, 2003 U.S. Dist. LEXIS 6270 (N.D. Ill. 2003), where the defendants continued to infringe the plaintiffs' copyrights in violation of an injunction, the Court held the defendants in contempt and ordered them to pay the plaintiffs' attorneys' fees and costs of $103,850.54 as well as a $5,000.00 fine to the court. *Id.* at *18-19.

As set forth hereinabove, there can be no genuine dispute that Defendants continue to violate this Court's Judgment, by operation of the GroundRez system which was found to infringe the '706 Patent. Given that Orissa and GMH intervened in the underlying litigation and were highly aware of the Judgment, Defendants' actions in continuing to violate the Judgment

through GroundWidget and GroundSpan reflect not merely a lack of "reasonable diligence", but rather a willful failure to comply with this Court's clear mandates.

In view of the above, Plaintiff has met its burden of proving by clear and convincing evidence that Defendants have violated, and continue to violate, the Judgment and are therefore subject to a finding of civil contempt and accompanying sanctions.   Because Defendants willfully continue to operate the GroundRez System, despite knowledge that such conduct clearly violates the Court's Judgment and infringes the '706 Patent, only harsh sanctions will serve the purpose of affecting Defendants' compliance with that Judgment.

To that end, because Defendants' continued operation of the GroundRez system (notwithstanding the minor name change) violates the Judgment and knowingly infringes the '706 Patent, Plaintiff respectfully requests that this Court should take the necessary steps to divest Defendants of the instrumentalities which Defendants continue to employ in violation of this Court's Injunction—namely, the central booking service, Global Distribution System Tools, Corporate Banking Tools, and Booking System.   Specifically, Plaintiff requests that this Court order the GroundRez System be turned over to Plaintiff, thereby precluding Defendants from any further use of the systems in contravention of this Court's Judgment.

Plaintiff also requests that the Court award Plaintiff its reasonable attorneys' fees and costs incurred in association with bringing this Motion.   Such an award is routine where a defendant is found in contempt of court for failure to abide by the terms of an injunction.  *See, e.g., Int'l Star Registry*, 325 F.Supp.2d at 885 (ordering defendant found in contempt to pay plaintiff's reasonable attorneys' fees generated in connection with its contempt motion); *Honor Plastic*, 466 F.Supp.2d at 1224-25 (same).

Plaintiff further requests that the Court order Defendants to participate in expedited discovery, including depositions, related to the '706 Patent, their software systems, revenues, corporate structure, officers, agents, and employees.   Plaintiff requests that the Court order Defendants to provide an accounting of GroundSpan's revenue since September 20, 2011, and to award Plaintiff compensatory damages for their failure to honor the Judgment.

Finally, Plaintiff requests that the Court order Defendants to file, within thirty (30) days of the date of the Court's Order, an affidavit setting forth in detail the manner and form in which Defendants (and those acting in concert with them) have complied with the terms of the Order. Should Defendants fail to file the required affidavit or to otherwise comply with the terms of the Court's Order, Plaintiff recommends that Defendants be subjected to a continuing fine, in an amount of not less than $1,000 per day, for each day Defendants continue to violate the Injunction through operation of the GroundRez system that infringes claims 11, 13-15, 17, and 18 of the '706 patent.  *See Honor Plastic*, 466 F.Supp.2d at 1225 (ordering that defendant be subjected to a fine of $3,000 per day for continued noncompliance with injunction); *Ahava*, 279 F.Supp.2d at 221 (ordering that defendant be subjected to a fine of $1,000 per day if it did not cease violating injunction).

### 2.  Global is Entitled to Expedited Discovery.

District courts have broad power to permit expedited discovery allowing plaintiffs to take early depositions and to require early document production in appropriate cases.  FED. R. CIV. P. 30(b), 34(b).   Expedited discovery may be granted when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that defendant

will suffer if expedited relief is granted.  *See Commodity Futures Trading Comm'n v. Advent Capital Partners, Ltd.,* No. 02-1384, 2002 WL 31357169, at *3 (N.D. Ga. 2002); *Advanced Portfolio Tech., Inc. v. Advanced Portfolio Tech. Ltd.*, No. 94 Civ. 5620 (JFK), 1994 WL 719696, at *3 (S.D.N.Y. 1994); *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

Global is being irreparably harmed by Defendants' infringement of the '706 Patent in violation of the Judgment.  Global, therefore, needs to ascertain Defendants' corporate structures, customers, revenues, and communications related to the GroundRez System.  Only armed with that information can Global seek to amend the complaint and temporary restraining order and/or preliminary injunction.

The discovery requested on an expedited basis in Global's proposed temporary restraining order has been precisely defined and carefully limited to include only what is essential for the preliminary injunction.  Discovery of Defendants' full use of the GroundRez System will permit Global to gain a full and accurate picture of Defendants' infringing activities and ensure that these activities will be contained.

Specifically, Global needs to obtain copies of all documents, including communications, related to (1) the '706 Patent, (2) the central booking services, (3) Global Distribution System Tools, (4) Corporate Banking Tools, (5) Booking System, (6) the Global litigation, (7) corporate structures and officers, and (8) customers and revenues since September 20, 2011.

Plaintiff is unaware of any reason that Defendants cannot comply with these requests without undue burden.  Accordingly, the request for expedited discovery should be granted.

### B.  Global is Entitled to a Permanent Injunction to Enforce the Judgment.

A plaintiff is entitled to a permanent injunction if it establishes the following: (1) a substantial likelihood that plaintiff may prevail on the merits; (2) a substantial threat that plaintiff

will suffer irreparable injury if interlocutory injunctive relief is not granted; (3) that the threatened injury to plaintiff outweighs any threatened harm an injunction may do to defendants; and (4) that granting a preliminary injunction will not disserve the public interest.  *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 589 F.3d 831, 861 (Fed. Cir. 2010) (affirming grant of permanent injunction for patent infringement); *Acumed, LLC v. Stryker Corp.*, 551 F.3d 1323, 1327 (Fed. Cir. 2008) (same); *See Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).  In the case at bar, all four factors support issuance of a permanent injunction.

      1.      **Global will Likely Prevail on its Claims, Having Already Established the Validity and Infringement of the '706 Patent Against Defendants' Predecessor GroundRez.**

Global will likely prevail on all its claims.  Plaintiff Global's claims are simply enforcement of a Judgment that's already entered.  The '706 Patent has already been declared "valid and enforceable."  (Doc. 94).  GroundRez was enjoined from operating systems that infringe the '706 Patent.  In the same action, Defendants Orissa and GMH sought to intervene upon the magistrate recommending partial granting of summary judgment in Global's favor. Defendants Orissa and GMH, holding companies for GroundWidgets and GroundSpan, were highly aware of the Judgment and acknowledged that their interests were not protected in the litigation and they would face future attacks by Global on their use of the Transportation Software.  (Doc. 83 at p. 9).  They were precluded from intervening at the 11th hour, and now they've chosen to merely infringe the '706 Patent under a different name, as though a rose by any other name is no longer a rose.

## 2.    Global's Loss Is Not Compensable Through Monetary Damages.

The loss of market share, brand recognition, and customer goodwill by GGA due to Defendant' continuing infringement are generally recognized as the type of losses that monetary damages are insufficient to cure. *i4i Ltd.*, 598 F.3d at 862. Such losses may frequently defy attempts at valuation, particularly when the infringing acts significantly change the relevant market. *Id.*

Global was able to secure a strong position in the marketplace for global ground reservation services due to its ownership of the '706 Patent. Kupper Decl., ¶ 6. The '706 Patent granted Global a right to differentiate itself from Defendant by preventing its competitor from offering the patented features. *Id.*, ¶ 7 (no licenses to the '706 Patent), ¶ 13. Global's credibility and goodwill with its clients and potential clients have been jeopardized because they have come to rely on Global's statements that the '706 Patent grants Global the right to exclude others from providing services that are identical to Global's services. *Id.* As a result of Defendants' actions, Global has been damaged in a manner that monetary damages are insufficient to cure.

Courts often look to a patent owner's decision not to license its competitors, and thus maintain exclusivity, as evidence of the inadequacy of monetary damages as a remedy. *Acumed,* 551 F.3d at 1328-29; *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 505 F.Supp.2d 359, 379 (S.D. Tex. 2007). Neither GGA nor any of the previous owners of the '706 Patent has licensed the patent to any direct competitors. Kupper Decl., ¶ 7. By not entering into license agreements, Global has determined that its business interests are best served by using the '706 Patent to differentiate itself from its competitors. This determination is compelling evidence that monetary damages could not adequately compensate Global for Defendant's continued use of its patented features. Further, this Court has previously recognized that monetary damages may be

an inadequate remedy when there has been a finding of willful infringement. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* Civil Action No. 2-04-cv-32 (TJW), 2007 WL 869576, at *2 (E.D. Tex. 2007), *overruled on other grounds*, 521 F.3d 1351 (Fed. Cir. 2008)6; *Visto Corp.*, 2006 WL 3741891 at *4.   Reckless, intentional infringement should not be rewarded with a compulsory license - particularly where the patentee has a policy of not licensing its competitors. As established above, Defendants have willfully infringed the '706 Patent which further supports issuance of a permanent injunction.

### 3.   The Balance of Hardships Favors Issuance of a Permanent Injunction.

This Court must balance Global's harm from the wrongful denial of a preliminary injunction against any harm Defendants may suffer from granting an injunction that would not be cured by prevailing on the merits and recovering on Plaintiff's injunction bond.  *See, e.g., MGM Well Services, Inc. v. Mega Lift Systems, LLC*, No. Civ. A. H-05-1634, 2005 WL 1693152 (S.D. Tex. 2005).  The balance of hardships weighs in favor of granting a permanent injunction. Global would face ongoing irreparable injury if Defendants' infringement continues.  Global's primary service, ground transportation reservation assistance, is the identical to, and directly competes with, Defendants' infringing services. Each day of Defendants' infringement causes loss of Global's business and harm to its reputation as a leader in the industry. As this harm is directly caused by Defendants' infringement, issuance of a permanent injunction is appropriate. *TiVo*, 446 F.Supp.2d at 670.

On the other hand, the resulting hardship to Defendants and its clients does not weigh against an injunction, as it is a consequence of Defendants' infringement. Neither commercial success, nor sunk development costs, should shield an infringer from injunctive relief. *i4i Ltd.*, 598 F.3d at 863.  Defendants are not entitled to continue infringing simply because they successfully exploited their infringement. *Id*. "One who elects to build a business on a product

found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Acumed,* 551 F.3d at 1330.  Any potential harm to Defendants results directly from their knowing violation of the Judgment and infringement of the '706 Patent.  Balancing this against the irreparable harm to Global's goodwill and reputation, built through years, and the disastrous long-term effects of Defendants' unfettered infringement on Global's business, establishes that the harm to Global outweighs the harm to Defendants.

### 4.      The Public Interest Is Served by Granting Injunctive Relief.

The public interest is generally served by protecting patent rights. *i4i Ltd.*, 598 F.3d at 863; *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2009).   Permitting Defendants to continue to offer their infringing services would undermine the incentive for innovation provided by the patent statute. In addition, when a defendant's services, like those of Defendants in the present case, do not relate to a significant compelling public interest, such as public health, this factor weighs in favor of an injunction. *i4i Ltd.*, 670 F.Supp.2d at 601; *TiVo*, 446 F.Supp.2d at 670.  To allow Defendants' unfettered infringement would defeat the very purpose of the laws against infringement.  Thus, the public's interest in issuance of a permanent injunction supports enjoining Defendants in the present case.

As established above, all of the *eBay* factors support the issuance of a permanent injunction. Therefore, Global respectfully requests enforcement of the Judgment against Defendants – that Defendants be enjoined as set out in the Temporary Restraining Order submitted contemporaneously herewith and then enjoined permanently through a Permanent Injunction.

## IV.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Global Ground Automation, Inc. respectfully requests that the Judgment be enforced against Defendants Orissa Holdings, LLC, Ground Management Holdings, LLC, GroundWidgets, and GroundSpan International, Inc. as set forththerein.    A proposed Temporary Restraining Order is submitted contemporaneously herewith.


Dated: December 24, 2014

Respectfully submitted,
/s/ Mary-Olga Lovett
Mary-Olga Lovett
Texas State Bar No. 00789289
Greenberg Traurig, LLP
1000 Louisiana Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 374-3541
Facsimile:  (713) 754-7541
Email:  lovettm@gtlaw.com

Of Counsel:
Douglas R. McSwane Jr.
Texas State Bar No. 13861300
Glenn Thames, Jr.
Texas State Bar No. 00785097
Potter Minton P.C.
110 N. College, Suite 500
Plaza Tower
Tyler, Texas 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846
E-mail:  dougmcswane@potterminton.com

Pamela Anne Ferguson
Texas State Bar No. 24002543
Greenberg Traurig, LLP
1000 Louisiana Street
Houston, Texas 77021
Telephone:  (713) 374-3579
Facsimile:  (713) 754-7579
Email:  lovettm@gtlaw.com
          fergusonop@gtlaw.com

**ATTORNEYS FOR PLAINTIFF**
**GLOBAL GROUND AUTOMATION, INC.**

21